## SALTMARSH v. THE P. & M. BANK.

1. The Planters and Merchants' Bank had no power, after the judgment of the circuit court declaring its charter forfeited, to make a contract, except so far as it was authorized to act by the statute providing for the ascertainment of the fact, whether its charter was forfeited or not.

2. This statute authorizes the bank to exert all the powers conferred by the charter, for the purpose of collecting its debts, but it had no power to discount, or purchase a bill of exchange, as a business transaction; an averment therefore, in a plea, that the bill sued upon was acquired by the bank by discounting it, is sufficient *prima facie* to show the transaction was unauthorized.

3. H being indebted to the bank, and in failing circumstances, to secure the debt, the bank received from W, a bill of exchange—Held, that though this was done without the consent of H, it was authorized by the statute, if the object was to secure a debt, otherwise bad, or doubtful; but that the bank could not engage in traffic upon its assets, by purchasing bills, by discount, for profit.

4. B, being indebted to the L. Ins. & T. Co., obtained from his friends, certain blank bills of exchange, drawn and indorsed by them, he being the acceptor, which blanks were to be used by him, only in renewal of the debt due the L. Ins. & T. Co. In violation of this agreement, he filled up one of the blanks for $6,000, and sold it to W for $5,000, being about at the rate of 20 per cent. discount. W afterwards transferred the bill to the P. & M. Bank, by which, suit was brought against one of the indorsers. Held, first, that the bill being in the hand of the acceptor, is evidence to charge the indorsee, that it was drawn, and indorsed, for the accommodation of the acceptor. Second, that as W purchased the bill at 20 per cent. discount, he could only recover the $5,000 advanced by him, from the acceptor, and the statute of usury of this State, avoiding the bill as to all but the principal sum, as between the original parties, it is void to the same extent into whose ever hands it may afterwards go. Third, that it should have been left to the jury to determine the fact of usury.

Saltmarsh v. The P. & M. Bank.

Writ of Error to the Circuit Court of Mobile. Before the Hon. John Bragg.

MOTION, by the plaintiff in error, against the defendant, as indorser of a bill of exchange for $6,000 drawn by Samuel M. Hill, on W. Bower & Co. in favor of Allen W. Coleman, and by him, and the defendant in error, indorsed to the plaintiff.

The defendant pleaded, 1. *non assumpsit.* 2. That the plaintiff had been deprived of its charter by the judgment of the circuit court of Mobile, upon a writ of *quo warranto,* and that afterwards by "discount thereof," became the purchaser of the bill of exchange, and that the same was not, in any manner held by the bank, prior to the judgment of forfeiture. Two other special pleas, substantially the same as the second, were also filed. The plaintiff demurred to the three special pleas, and his demurrer was sustained. Issue being joined on the plea of non-assumpsit, it appears from a bill of exceptions, that the plaintiff proved, that on the 21st June, 1845, one L. M. Wilson, whose name appears as an indorser on the bill sued on, transferred it to plaintiff, in consideration of the transfer and assignment to him, of two judgments held by the bank against P. T. Harris, and others. That the assignment of the judgments was absolute, and unconditional, to Wilson. That the transfer was not made at the instance or request of the judgment debtors, but the bill was taken to secure the collection of the judgments against Harris, who was in failing circumstances.

The defendant then proved the judgment of the circuit court, on the 27th February, 1843, declaring the charter of the bank forfeited. The defendant also proved by W. Bower, that he filled up the bill of exchange sued on, and handed it to Wilson, prior to the first of June, 1845. That at the time of the negotiation of the bill, he obtained $5,000 upon it; one thousand dollars being deducted from the face of the bill, at the time of the negotiation, which sum far exceeded lawful interest.

Samuel M. Hill, another witness, stated that there was a

large debt due to the Life Insurance and Trust Co., by W. Bower, as principal, and W. Rutherford, W. T. Minter, and witness as his sureties, and that the bill referred to, after it was filled up, was to be used as collateral, and in renewal of said debt. That said blank, and others for the same purpose, was delivered to W. Bower & Co., but that they were used for a different purpose, and in fraud of the intention of the parties. That no consideration passed to the defendant for his indorsement thereof, the blanks being made for the accommodation of W. Bower.

Allen W. Coleman also testified to the same facts.

Whereupon the court charged the jury, that if they believed the evidence, it did not prove, that the discount at which Wilson purchased the bill sued on, of W. Bower, was usurious, to which the defendant excepted. That the contract in proof, by which the bank became the holder' was, if believed by them, valid. That the bank had authority to take the bill of exchange from Wilson, upon the contract proved, and was entitled to recover of the defendant the amount of the bill, interest and damages. To this charge the defendant excepted, and assigns for error, the matters of law arising out of the bill of exceptions, and also the judgment of the court sustaining the demurrer to the pleas.

A. F. HOPKINS and P. HAMILTON, for plaintiff in error.

After the forfeiture of the charter of the bank, which was effected by the judgment that was rendered against the corporation by the circuit court of Mobile county, the bank had power only to maintain such suits as might be necessary to settle its old business. See act of February 13th, 1843, in pamphlet acts of 1843, § 1, p. 70, and § 7, p. 72.

By the first section of the act, the bank was deprived, as a consequence of the judgment of forfeiture, of all the corporate privileges and capacity, which had belonged to it, except so much capacity, or any privilege which might be reserved to the bank in the subsequent parts of the act. The 7th section contains the only reservation of power to sue which was made by the act for the bank, after the forfeiture of the charter.

The 4th section authorized the commissioners to sell the

real estate only.  The prohibition contained in the second proviso to the section, against the sale of more property than would be sufficient to pay the debts of the bank, did not give any additional authority to sell; the sole object of it was to limit the authority which had been previously given to sell so much only of what the commissioners were authorized by the section to sell, as might be necessary to pay the debts.  Property, in the second proviso, means the same thing as lands in the section, as is proved by using the word property in the first proviso of the section, as synonymous with lands.

The 11th section authorizes the commissioners to compound any doubtful or bad debt.  The act or contract by which a debt is compounded, is one to which the debtor and creditor are parties.  The sale of a judgment, or other evidence of a debt, to a third person, is a transaction wholly distinct from the composition of a debt,  The bill of exchange in this case, was acquired by the bank, after the forfeiture of its charter, as evidence of the amount of purchase money which Wilson, who transferred the bill to the bank, agreed to pay for the sale to him by the bank, of the judgment against Harris.  The bank purchased the bill and paid for it by the transfer to Wilson of its interest in that judgment. It had no more capacity after the forfeiture of the charter to purchase a bill of exchange with such means, than to buy one with bank notes.

The 12th section requires the commissioners, after the payment of the debts, to deliver to the stockholders all the lands, goods and chattels, and *choses in action* that shall remain.  As the commissioners had authority to compound doubtful or bad debts, and none to sell them, they are bound after the payment of the debts due from the bank, to deliver to the stockholders the evidences, and the control of the *choses in action* that they received from the bank, and which they had neither collected nor compounded.  As there is no express authority to sell the doubtful or bad debts, but is such power to compound them, the grant of express authority to compound them, is a denial of all implied power to sell them.

As the bank received the bill after the forfeiture of the

charter, it had no capacity at the time of the indorsement by Wilson, to make and become a party to the contract of indorsement, and none to acquire property in the bill, or a right to it. The indorsement in favor of the bank is void for want of capacity in the bank to make the contract. Humphrey's R. (Tenn.) 38; Kinnie's Law Comp. January No. 1847, 60; Bank U. S. v. Owen and others, 2 Pet. R. 527, 538, 540-1; White v. Campbell and others, 5 Humph. Rep. 88.

Bower, one of the acceptors, sold the bill to Wilson at 20 per cent. discount. The bill was drawn and indorsed for the accommodation solely of the acceptors, and in the hands of Bower, neither the drawer or indorser were liable upon it for any amount. As the bill had no validity till it was sold, and the sale of it was made at a rate of discount greater than that of lawful interest, the contract by which Wilson acquired it was usurious. Metcalf v. Watkins, 1 Porter's Rep. 57, 91-2; Powell v. Waters, 17 Johns. Rep. 179, 187; Munn v. Commission Co. 15 Johns. Rep, 56; 1 Harris & Gill's Rep. 477; 3 Gill & Johns. 482; 3 Pick. Rep. 184; 12 Pick. R. 565.

Until the repeal of the statute which rendered usurious contracts invalid, neither Wilson nor any subsequent indorsee could have recovered any thing upon this bill. Metcalf v. Watkins, 1 Por. Rep. 96, 97. Under the existing statute law, the usurious rate of discount must be treated as so much interest, added to the sum paid by Wilson to Bower for the bill, and the contract for this interest, consisting of the 20 per cent. discount, is void in the hands of Wilson, or his indorsee. His indorsee could recover only the $5,000, which Wilson paid for the bill, without lawful interest, even from the maturity of the bill, or damages for its dishonor. Clay's Dig. 591, § 9. The principal sum of money only is recoverable.

If no usury had been committed in discounting the bill, the bank suing as the immediate indorsee of Saltmarsh, could recover only the sum which had been paid upon discounting the bill—the $5,000, and lawful interest from the maturity of the bill, together with damages on $5,000, for the dishonor of the bill. 13 Johns. Rep. 52; 15 Ib. 56; 3 Ala. R. 158-9.

In the case of Cameron and another v. Nall, 3 Ala. 158, it was not necessary to decide whether usury had been committed in the purchase of the note. The right to recover upon it was maintained upon the ground that a new note had been given, which was the foundation of the suit. See 8 Ala. R. 55. If it were a decision upon the point for which it is cited by the other side, it is opposed to the weight of authorities on the same point. See 3 Gill & John. R. 482; 1 Harris & Gill's R. 477; 3 Pick. R. 184; 12 Ib. 565. 8 Ala. 53, 55, cited by the other side, is in favor of the plaintiff in error.

As Wilson purchased the bill from Bower, one of the acceptors, the transaction on its face showed that the bill had been made by the other parties to it for the accommodation of the acceptors, and that it had no validity in the hands of Bower. Wilson therefore is charged with the knowledge of the character of the bill, that it had been made to enable the acceptors to raise money upon it. Wallace v. The Branch Bank at Mobile, 1 Ala. 565, 570; 18 Wend. Rep. 478; 16 Ib. 575-6.

As the bill was partially void in the hands of Wilson, for the usurious rate of discount at which he took it, it is void to the same extent in the hands of the bank, his indorsee. 1 Harris & Gill, 477; Saltmarsh v. Tuthill, 13 Ala. 390.

PHILLIPS, contra.

By the provisions of the act of 1843, p. 73, and the act of 1845, p. 46, the powers of the Planters and Merchants' Bank, for the purpose of settling their affairs in the collecting of their debts, and bringing suit, are preserved as they existed in the charter.

By the 8th section of the act last cited, it is enacted, "that the trustees may use the corporate name of said bank in the collection of debts due to the same; and may use all the modes and powers given to said bank by its original charter, or by any subsequent act of the legislature for the collection of its debts, in the same manner as if the charter of the bank had never been forfeited."

The second plea asserts, that the bank became the purcha-

85

ser of the bill sued on by discount, and that they did not receive it in renewal, or extension of any claim or demand.

The third plea asserts that they purchased and discounted the said bill, and that they did not receive it in renewal or exchange of any claim against defendant.

The fourth plea asserts that they became the holder of the bill after judgment of forfeiture.

The special pleas do not exclude the case of a discount, purchase, or receipt of the bill either as collateral to, or in payment of a precedent debt.

If the bill could have been taken by the bank "in the collection of debts," before the forfeiture, then the act of 1845 continues the same powers in the commissioner since the forfeiture.

Not necessary in a summary proceeding by notice that the indorsement should be filled up, for such a proceeding is intended only to bring the party into court, and is not governed by technical rules. Lyon v. State Bank, 1 Stew. 422; Walker v. State Bank, 4 S. & P. 215; Br. Bank v. Harrison, 2 Por. 540 Crawford v. Bank of Mobile, 7 Ala. R. 205; Colgin v. State Bank, 11 Ib. 226. Nor is this necessary by the technical proceedings of the common law. Chitty on Bills, 588; Riggs v. Andrews, 8 Ala. 628; Sawyer v. Patterson, 11 Ib. 526.

The bill was taken for a judgment held by the bank—this was the payment of value, and placed the bank in the position of a *bona fide* holder. Bank of Mobile v. Hall, 6 Ala. 639. A *bona fide* holder for value, not affected by the usury of an intermediate indorsement. Parr v. Eliason, 1 East, 92; Whitworth v. Adams, 5 Rand. 333; Folk v. May, 1 Bay. 486; Young v. Berkley, 2 N. H. 410; Johnson v. King & Jones, 3 McCord, 365; Bush v. Gwin, 4 Har. & J. 507; Holt's N. P. 256; Cameron & Johnson v. Nall, 3 Ala. 158; Palmer v. Severance, 8 Ib. 54; Belden v. Lamb, 17 Conn. 452,

The overruling (by the English courts) of the case of Parr v. Eliason, gave such a shock to the negotiability of commercial paper, as to render necessary the act of 58 Geo. III. for the purpose of re-establishing public confidence.

Supposing the bank to be affected by the transaction be-

tween Bower and Wilson—that was a purchase of a bill, and not a mere loan of money, and is therefore not within the terms of the usury act. Lloyd v. Scott, 4 Pet. 205; Ib. 9 Ib. 446; Holcomb's leading cases, 175.

It is admitted, that if, in fact, the transaction was intended as a loan, it will be condemned as usurious, whatever form or shape it may assume, as between the mediate parties to the usury. If a note is valid in its inception and not made for the purpose of raising money—no subsequent usurious transaction can affect its validity. Ferral v. Shean, 1 Saund. 295; Knight v. Putnam, 3 Pick. 183; Chastam v. Johnson, 5 Hill, 523; Bush v. Livingston, 2 Caines, 66; Johnson v. King, 3 McCord, 365.

The plea of usury is personal to the borrower. Little v. Hord, Hardin, 82; Collier v. Neville, 3 Dev. 32; Reading v. Weston, 7 Conn. 409; Knight v. Putnam, 3 Pick. 183; Cook & Kornegay v. Dyer, 3 Ala. 645.

This is the case of a note made *bona fide* for the payment of an existing debt, and misapplied by the agent to whom it was intrusted—a *bona fide* purchaser will be protected. Decatur Bank v. Spence, 9 Ala. 802; Manning v. Norwood, 1 Ib. 429.

CHILTON, J.—The first question we propose to consider is, whether the Merchants & Planters' Bank of Mobile could lawfully purchase the bill in suit, in the manner averred in the second and third pleas, to which a demurrer was sustained? This question we regard as one of easy solution.

There is no legal proposition better settled, than that a corporation created by statute, can do no act, nor exercise any powers, except such as are conferred on it by its charter, or such as result by necessary implication, from some power expressly given, to enable it to discharge the functions and effectuate the object designed by its creation. Angel & Ames on Cor. 66; Beally v. Lessee of Knowler, 4 Peters, 152; Smith v. The Ala. Life Ins. & T. Co., 4 Ala. R. 561; The State v. Granville Alexandrian Society, 11 Ohio Rep. 1; Selma & Tenn. R. R. Co. v. Tipton, 5 Ala. Rep. 787. Upon the forfeiture of its charter, which works the dissolution, or civil death of the corporation, it is said that by the

rules of the common law, its real estate remaining, would revert to the original grantor or his heirs, its personal property vests in the State, and the debts due to and from the corporation, are totally extinguished. A. & A. on Cor. 128, 667 ; 1 Iredell's Eq. Rep. 358 ; Paschal v. Whitsett, 11 Ala. Rep. 472.

In Miami Exporting Co. v. Gano, 13 Ohio, 269, it was held, that after the forfeiture of the charter, and the appointment of receivers, the corporation, as such, could not prosecute a suit; the receivers alone are entitled to sue in the name of the corporation, and they must show in the declaration the character in which they prosecute. So in Mississippi, it was held, in the Bank of Miss. v. Wrenn, 3 Sm. & M. R. 791, that after the expiration of the charter, the bank ceases to exist for any purpose, in the absence of any statutory provision to the contrary, and suits in its name must abate. These authorities may suffice to show, that aside from statutory provision, the bank in this case, after its charter was duly declared forfeited by the judgment of a court of competent jurisdiction, had no power to make a contract, much less to invoke the aid of the court for its enforcement, Let us then turn to the statute, and ascertain the extent of the powers with which it was invested at the time the bill in question was purchased.

By an act passed 13th February, 1843, entitled "an act for the final settlement of the affairs of the Planters and Merchants' Bank of Mobile," after declaring its charter forfeited, by reason of its failure to pay on demand its debts and obligations, and providing for the exhibition of an information in 'the nature of a *quo warranto*, by the solicitor of the Mobile circuit, upon the requisition of the governor, and the appointment of commissioners to take charge of its effects, with power to sue, &c.; the 11th section proceeds as follows : " It shall be lawful for the said commissioners to submit to arbitration contested claims, either those against, or held by the bank, *and to compound any doubtful or bad debt*," &c.

The judgment of the circuit court of Mobile, which was authorized by the act to take cognizance of the cause, was obtained upon the information filed, on the 27th February, 1843, declaring the charter forfeited. By the 8th section of

an act passed in 1845, (see pamphlet acts, p. 46,) it is provided, " that the trustees may use the corporate name of said bank, in the collection of debts due to the same ; and may use all the modes and powers given to said bank by its original charter, or any subsequent act of the legislature for the collection of its debts in the same manner as if the charter of the bank [had never been forfeited." Upon the foregoing provisions, which are are all that have any bearing upon the question before us, we think it very clear, the bank had no power to acquire the bill sued on, in the manner averred in the second and third pleas. These pleas asssert how the bank became the holder of said bills—the second plea states, " the said plaintiff, by *discount* thereof, became the purchaser," &c.—the other avers, " the said bank *discounted* and purchased the said bill of exchange in the said plaintiff's notice described," &c.

What are we to understand by the term *discount*, when applied to the transaction of the bank in acquiring the bill of exchange? The term discount, as a substantive, signifies the interest allowed in advancing upon bills of exchange or negotiable securities : and " *to discount* a bill is to buy it for a less sum than that, which upon its face is payable." Now, although we would intend, in the absence of such averment, that the bank acquired the bill in some mode authorized by the statutes, we think that as the power to discount bills as a business transaction is taken away by the forfeiture from the bank, the averment in the pleas, that the bill was acquired by discount, is sufficient *prima facie* to show the transaction was unauthorized, and to cast upon the bank the necessity of showing, that the transaction came within the scope and design of the statutes continuing its existence. Hence, these pleas should have been replied to. In respect to the fourth plea, which merely avers that the plaintiff became the holder of the bill after the forfeiture of its charter, it is manifestly bad. The bank, for the purpose of collecting its debts, retained all the powers which its charter, or any subsequent statute conferred upon it. If, as the bill of exceptions states, " Harris was in failing circumstances, and the bill was received by the bank as a payment, to make the amount of the debt secure to the bank," although the negotiation was made

without the consent of Harris, or any party to the judgment, the transaction was legitimate. As, then, the bank, under certain circumstances, had full power to take the bill by virtue of the statutes which we are bound judicially to notice, we must, as before mentioned, presume, in the absence of an averment in the plea to the contrary, that it acquired the bill in some of the modes sanctioned by law. Insurance Co. v. Sturgis, 2 Cow. 674; Folger v. Chase, 18 Pick. R. 661. As this presumption is not repelled by the averments of the fourth plea, the demurrer to it was properly sustained.

We would further remark, with regard to the power of the bank under the law to make the transaction with Wilson, as indicated by the proof set out in the bill of exceptions, the statute authorizing it to use all the means, and exercise all the powers theretofore possessed by it for the collection of its debts, being remedial, must receive a liberal construction, and embraces not only the power to bring suits upon its choses in action, but extends to all the usual and appropriate modes of securing the ultimate collection of its demands. If third persons choose to interpose and pay, or secure by bill or otherwise, the payment of a bad or doubtful debt, there is nothing in the statute which prohibits the bank from availing itself of such means, for the satisfaction or security of its demands. If, however, under the pretext of security, the bank should engage in trafficking upon its assets in the purchase of bills by discount for profit, such transactions would clearly be without authority of law, and void. As to powers of the bank, see Angell & Ames on Con. 200.

The above will sufficiently indicate our view of the law as applicable to the charge of the court respecting the power of the bank to purchase the bill. Upon the question of usury, we have considered the argument of the counsel for the defendant in error, that inasmuch as some of the parties to the bill were debtors to the insurance company, to renew which debt the bill was indorsed, and if the company could have enforced the trust while the bill was in the hands of Bower & Co., the plaintiff in error cannot be regarded as an accommodation indorser of Bower for the purpose of enabling him to borrow money, and therefore the transaction between Bower and Wilson was a sale of the bill, and not the borrow-

ing of money upon accommodation paper made for that purpose. If we rightly apprehend the position, we are unable to discover how the equitable rights of the insurance company could in any way affect the liability of the plaintiff in error. The bill, never having been negotiated or passed to that company, although indorsed for that purpose, is placed upon the same footing as if it had not been made for the purpose. The witness, Hill, proves that Bower was the agent to fill up the blank as a security to the insurance company; he violates the trust, and assumes an agency to fill it up for a different purpose, viz., to obtain money from Wilson, say at twenty per centum discount. Now, we cannot conceive, how a violation, or breach of trust on the part of Bower, could impose on Saltmarsh a higher obligation, or place him in a worse condition, than if the negotiation to Wilson had been fully authorized by him.

We think the proof recited in the bill of exceptions, in this case, tends to show the transaction as between Wilson and Bower & Co. to have been usurious. Bower & Co. received from Wilson five thousand dollars, and the bill sued on was filled up by them, having been endorsed for their accommodation by one Coleman and Saltmarsh, for six thousand dollars, the bill having twelve months to run.

This bill was endorsed solely for the accommodation of the acceptors, and while in their hands created no obligation upon the endorsers to pay. The acceptors being the holders of the bill, is evidence to charge the endorsee, Wilson, that it was drawn and endorsed for the accommodation of the acceptors, who, by negotiating the bill gave it vitality.

In Wallace v. The Branch Bank at Mobile, 1 Ala. Rep. 565, it was held, that if the maker of a promissory note carries it to a bank to get it discounted on his own account, with the name of a third person endorsed thereon, the transaction *on its face* shows that it is a mere accommodation indorsement, or the note would not be in the hands of the maker.

In Metcalfe v. Watkins, 1 Porter, 57, it was held, that under our previous statute against usury, which made the whole contract void, a note or bill made for the especial accommodation of an individual, to enable him to raise money by its

discount, at a rate beyond the legal interest, is usurious in the hand of an innocent purchaser, and that he cannot maintain an action upon it, being void in its original formation.

In New-York the law is well settled, by numerous adjudications, that if the note or bill could not support an action as between the original parties before it had been sold, then if it is sold at a rate higher than the legal interest, it will be usury.  Powell v. Waters, 17 Johns. Rep. 179; Mun v. The Commission Co. 15 Johns. Rep. 55.  The same doctrine is held in Maryland—Saurnine v. Brunner, 1 Har. & Gill, 477; Cockey v. Forrest, 3 Gill & Johns. 482.

In Cameron v. Johnson & Nall, 3 Ala. Rep. 158, it is held, the change of the statute which avoids the note or bill, as to the interest merely, makes such change in the character of the contract, as to authorise an innocent purchaser of it to recover the amount advanced by him.  Our present statute avoids the note or bill, only as to all but the principal sum. Digest, 591, § 9.  It is clear, in the present case, that Wilson could have recovered from the acceptors only the $5000 advanced by him by reason of the usury, having received the bill from them at the rate of 20 per cent. discount; and by the well settled law, the statute avoiding the bill as to all but the principal sum, as between the original parties, the bill is void to the same extent in whose soever hands it may afterwards go.  It is, however, unnecessary to elaborate this point, as having had occasion to examine the question of usury, at considerable length, in the case of Saltmarsh v. Tuthill, at the last term of this court, it is unnecessary further to notice it here.

The charge of the court affirms, the evidence did not tend to show usury in the transaction, as between Bower & Co. and Wilson.  This charge, as we have seen, was erroneous. The question should have been left to the jury to determine the fact of usury, upon the well established rule, that when the evidence is doubtful or conflicting, the court cannot charge upon its effect.  Boyd v. McIvor, 11 Ala. Rep. 822.

It remains only to say, the judgment of the circuit court is reversed, and the cause is remanded.