## SALTMARSH *vs.* PLANT. & MER. BANK OF MOBILE.

1. After the charter of a corporation is declared forfeited, it can do no act, by which rights can be acquired, nor can it maintain a suit to enforce those acquired during the continuance of the charter, unless its power and capacity for that purpose is continued by statute, after its existence as a corporation is ended.

2. Under the powers confered by the Acts of the 13th February 1843, for the final settlement of the affairs of The Planters and Merchants Bank of Mobile, and of the 24th January 1845, amendatory thereof, the trustees appointed by virtue of the latter act may lawfully enter into a contract with a third person, without the consent of the debtor, to secure the pay-

ment of a doubtful debt due to the Bank, and transfer the debt for that purpose to such third person.

3. A contract, by which the endorsee of a valid bill or other chose in action assigns it in exchange for a debt of less amount, is not usurious, unless intended as a device to evade the statute; nor can such a transaction in legal parlance be considered a discount of the bill.

4. The amount of the recovery on a usurious contract is limited by the Act of 1834, to the principal sum loaned or advanced, and interest on that sum cannot be allowed.

Error to the Circuit Court of Mobile. Tried before the Hon. John Bragg.

THIS was a proceeding by notice to recover of the plaintiffs in error the amount due on a bill of exchange for $6,000, drawn by Samuel M. Hill on William Bower & Co., and by them accepted, in favor of Allen W. Coleman, by whom, with the plaintiff in error and L. M. Wilson, it was successively endorsed. The bill was drawn, and endorsed by Coleman & Saltmarsh for the accommodation of Bower & Co., to whom it was delivered and from whom Wilson purchased it for $5,000, it then having about twelve months to run. Soon after its purchase by Wilson, he transfered it to the defendant in error and received from the defendant in error as the consideration therefor the assignment of two judgments, which the latter held against P. T. Harris, who at the time was embarrassed and considered of doubtful solvency. The transfer of these judgments to Wilson was made without the consent of Harris, but was unconditional, and the contract was entered into on the part of the defendant in error to secure the debt due by Harris, and on the part of Wilson to enable him to secure the amount due to him on a junior judgment, which he held against Harris; and in the transaction the defendant in error took the bill at a deduction from the amount specified on its face of a sum equal to eight per cent. interest for the time it had to run. Before this transaction occurred, the charter of the defendant in error had been declared forfeited, and its assets committed, under the acts of the 13th February 1843, and 24th January 1845, to the charge of trustees. The court charged the jury—1st, that the plaintiff, if they believed the evidence, obtained the bill by a valid contract and was entitled to recover the sum of five thousand dollars, the amount received by Bower & Co. of Wilson, with law-

Saltmarsh v. P. & M. Bank of Mobile.

ful interest from the time of notice of the motion in this case—2d, that if the plaintiff took the bill to secure a debt due it, it was not a discount of the bill; that a discount of a bill is a purchase of it for money or value at an amount less than its face. The defendant asked the court to charge the jury, 1st, that if they believed the plaintiff acquired the bill by trafficking on its assets, the plaintiff could not recover—2d, that if they believed the plaintiff received the bill at a value less than its face, it was a discount and the plaintiff could not recover—3d, that if they believed the plaintiff took the bill at a deduction from its face of more than after the rate of six per cent. per annum, for the time the bill had to run, the plaintiff could not recover—all of which charges the court refused to give.   To the charges given and to the refusal of the court to charge as requested the defendant excepted and now assigns them as error.

HAMILTON and HOPKINS, for the plaintiff:

Was the Bank competent to take this bill, on the contract proven?   The case has heretofore been before this court.—14 Ala. 668.   The evidence of the contract is now more full, and it is submitted to show a case of the Bank trafficking on its assets, within the meaning of the opinion of this court then pronounced.   It is not the case of the collection of a debt by the Bank, but of a dealing with a third party—the sale of one of its assets for a profit—and the purchase of a bill running to maturity at a discount.—14 Ala. 677-8.

On the supposition that the Bank had the right to acquire this bill, still it had no authority to take it at a rate of discount exceeding six per cent. per annum.   Section 8th of its charter forbids its taking more than six per cent.—and subsequent to the forfeiture of its charter, no new powers were given to it: its power to collect its debts is declared to remain unaltered—and it never had power to deal in the creation of a new debt, at a greater rate than six per cent.   It is therefore submitted, that it acquired this bill on an illegal contract—and the court erred in charging that the limitation expired with its charter.   It would be a singular anomaly, if the destruction of the charter of a corporation were to have the effect of enlarging the powers of the corporation.—See opinion above cited, pages 675-6; 1 Ired. Eq. R. 358, and other cases cited.

There is error in the charges and refusals of the court. The court told the jury if they believed the testimony, the plaintiff was entitled to recover, and afterwards on explanatory charges being asked, gave such as are conflicting and contradictory and calculated to mislead the jury in the cause. The court in fact, in one charge, absolutely went contrary to the opinion of this court, heretofore expressed—or rather he refused to give a charge based on that opinion,—to-wit, he refused to charge that if the bill was acquired by trafficking on the assets of the Bank, it could not recover.

The statute, (Clay's Digest, 591, section 9,) provides that in cases of usury, the contract shall be void for the whole interest, but the principal sum shall be recoverable. The proof is that $5,000 was the sum of money advanced by Wilson. The contract is void for all beyond that sum, and no interest can be recovered—nothing but the principal can be recovered. To allow any interest on that sum is forbidden by the statute, whether it date from the maturity of the bill or commencement of the suit, the recovery can only be for $5,000 —such is the law of this case, as pronounced by this court,—14 Ala. 680—(and that decision is the settled law of this case)—4 S. & Porter, 54; 1 Port. 313.

PHILLIPS, for the defendant:

1. The evidence shows that the bill was taken by the trustees to secure a doubtful debt held by them. The court held, when the case was last in this court, (14 Ala. Rep.) that this was a legal transaction, and that it was not the exercise of the banking power of "discounting." If it were necessary to sustain this decision of the court, the authorities may be found in Hallowell Bank v. Hamlin, 14 Mass. 178; Fleckner v. U. S. Bank, 8 Wheat. 355; Harwood v. Ramsay, 15 Serg. & R. 31; New York Firemen's Ins. Comp. 2 Cow. 664.

2. The court having decided, in 14 Ala., that the trustees had a right to enter into this contract, notwithstanding the forfeiture, it is now insisted that the transaction was illegal, because the trustees deducted 8 per cent. per annum, from the bill for the time it had to run. This objection is founded upon the prohibition in the charter against taking more than 6 per cent. on "loans and discounts." But this court has already sustained the transaction, upon the express ground that it was *not* a "loan

or discount," but a settlement in the *bona fide* liquidation of the affairs of the Bank. The deduction made by the trustees was of the legal interest, in order to arrive at the cash equivalent on the day when the judgment was transfered.

3. But if it had been a "loan or discount" by the Bank, the defendant could not avoid the payment of the note, on the aleged violation of the charter.—Lyon v. State Bank, 1 Stew. 468; Fleckner v. U. S. Bank, 8 Wheat. 355; Phila. Comp'y v. Towner, 13 Conn. 259; Grand Gulf Bank v. Archer, 8 Smede & M. 151; Bank v. Hammond, 1 Rich. L. R. 288; Glass Comp'y v. Dewey, 16 Mass. 102; Canal v. Rail Road, 4 Gill & J. 122; Duke v. Cahawba Comp'y, 16 Ala. 374.

4. The usury act avoids the interest contracted for and makes the principal sum recoverable. When? On the pay day of the contract. The principal is then an ascertained debt, *due and "recoverable,"* and if the party fails then to pay that amount, he is liable for interest from that time. As the statute does not change the nature of the contract, a bill of exchange will also carry damages on the amount, which the law declares to be its true amount—the usury act not repealing the act giving the damages. Interest is allowed upon all amounts ascertained to be due, (see Clay's Dig., Interest,) and wherever the law by implication makes it the duty of a party to pay over.—Dodge v. Perkins, 9 Pick. 369; Carmil v. Brown, 1 A. K. Marsh. 576; McKinley v. Blackledge, 2 Hay. 28; Simpson v. McMillan, 1 Nott & McC. 192; Hallett & Walker v. Allen, 13 Ala. 556.

5. The charge excepted to must be taken in connection with the facts of the case, and the evidence must be set out to show that it is error.—McBride v. Thompson, 8 Ala. 650; Armstead v. Thomas, 9 ib. 568; Hornfield v. Adams, 10 ib. 9; Brown v. Isbel, 11 ib. 1009.

DARGAN, C. J.—The evidence introduced on the trial and the instructions of the court to the jury present two questions for consideration. First, can the suit be maintained under the evidence? 2d, If so, what amount is the Bank entitled to recover? The evidence shows that a judgment had been rendered in the Circuit Court of Mobile on the 27th February 1843, by which the charter of the Bank was declared forfeited, and that the bill of exchange sued on was acquired from Wilson, the endorsee

of the plaintiff in error, about the 20th June 1845, under the following circumstances: The Bank held two judgments against P. T. Harris, whose solvency was then doubtful, and, in consideration of the bill sued on and two others, the Bank transfered to Wilson the said judgments. The object of the transfer of the judgments was not to satisfy or discharge them, but to enable Wilson to collect them, and thereby to secure another judgment, he held against Harris; and the motive and inducement, on the part of the Bank, was to secure to the Bank the debt of Harris, then supposed to be doubtful. It was also shown that the bill of exchange was not received by the Bank at the value expressed upon its face, but that a deduction was made at the rate of eight per cent. per annum, for the time the bill had to run, so as to make it, in the language of a witness, a "cash transaction." Upon this evidence, the court instructed the jury that the plaintiff was entitled to recover. When this case was before this court at a previous term, we held "that, aside from statutory provision, the Bank, after its charter was duly declared forfeited by a court of competent jurisdiction, had no capacity to make a contract, much less to invoke the aid of the court for its enforcement."—See Saltmarsh v. Plant. & Mer. Bank, 14 Ala. 668. Indeed, after the charter of a corporation is declared forfeited by competent authority, its existence is at an end; it can then do no act, by which rights can be acquired, nor can a suit be maintained in its name to recover those acquired during the continuance of its charter, unless its powers and capacities be continued by statute, after its existence as a corporation is ended, for some certain purposes. We must then look to the acts of the Legislature, which provide for the final settlement of the affairs of the Bank, for authority either to make the contract, by which the bill was acquired, or to maintain a suit upon it. The act of the 13th February 1843, declared the charter of the Bank forfeited, and required that the solicitor of the Mobile circuit, on the requisition of the Governor, should file an information in the nature of a *quo warranto* to have the fact of forfeiture judicially ascertained. Commissioners were also appointed to take charge of the effects of the Bank, with power to sue, and to submit to arbitration contested claims, and to compound any bad or doubtful debt. By the eighth section of the act of 24th January 1845, it is enacted,

that the trustees thereby appointed "may sue in the corporate name of said Bank in the collection of its debts, and may use all the modes and powers, given to said Bank by its original charter, or any subsequent act, for the purpose of collecting its debts, in the same manner as if the charter had not been forfeited." In the opinion heretofore pronounced in this case, it was said, "If third persons choose to interpose and pay, or secure by bill or otherwise, a bad or doubtful debt of the Bank, there is nothing in the statute, that would prohibit the Bank from availing itself of such means for the satisfaction or security of its demands. If, however, under the pretext of obtaining security, the Bank should engage in trafficking upon its assets in the purchase of bills by discount for profit, such transactions would be clearly without authority of law and void." We are bound to consider the question settled, that the trustees of the Bank, under the powers reserved to them, had the authority to receive payment of a debt due to the Bank from a third person, or to secure its payment by taking a note or bill, to which the original debtor was not a party. But, if the question was now presented for the first time, we should feel no hesitation in saying, that the trustees, for the purpose of securing and collecting the doubtful debts of the Bank, might lawfully transfer such debts to a third person and receive in consideration, either the amount of money due thereon, or a note or *bill to secure its payment.* Before the charter was forfeited no one could have doubted the capacity of the Bank to make such a contract for the purpose of collecting or securing its debts, and the act of 1845 expressly reserves to the trustees the right to use all the modes and powers, given to the Bank by its charter or by any subsequent act, for the purpose of collecting the debts due to it. Now we do not understand from this, that the trustees are to be confined to suits alone in carrying out this object, but they may compound or settle debts by extending the time of payment, or receive other securities in lieu thereof, if done with the intent and for the purpose of adjusting the affairs of the Bank. To deny to the trustees the power to make contracts, by which the debts of the Bank are collected, or their payment secured, would be to deprive them of one of the powers or modes of collection, without which the debt might be entirely lost. This could not have been the design of the act, by which these powers were

reserved to the trustees, but it is only a reasonable, and, we think, a just construction to hold, that the trustees may lawfully enter into a contract with a third person, even without the consent of the debtor, by which a doubtful debt due to the Bank is either paid, or its payment secured. Nor can the transfer by the trustees of the debt due to the Bank to such third person operate to annul the contract, or render it illegal. The question, therefore, was, what was the object and design of the contract, by which the Bank acquired the bill? If taken for the purpose of securing a doubtful debt, due from Harris, the contract was legal, and the payment of the bill may be enforced by suit in the name of the Bank.

But it is contended, that as eight per cent. was deducted from the face of the bill, for the time it had to run before maturity, the contract by which the Bank obtained it was void, because the Bank, by its original charter, could reserve only six per cent. upon its loans and discounts; that if the contract had been made by the Bank, before the forfeiture of its charter, the contract would have been void for the want of capacity to make it; and consequently that the contract, by which the trustees acquired the bill, must be void, as their powers cannot be greater than the powers of the Bank under its original charter.

We do not think it necessary to examine whether a contract would have been void *in toto*, if entered into by the Bank during the continuance of its charter, by which a greater rate of interest was reserved than by the law of its charter it was authorised to take; for the contract, by which the bill in this case was acquired, was not usurious, nor was it a discount or a loan in the proper sense of these terms. A note or bill, which in the hands of the holder is a valid debt, may be bought or sold as any other chattel at its real or supposed value, and the transfer of such a note or bill at a discount beyond the legal rate of interest is not usurious, although the holder may endorse it, unless the transaction was a mere device to evade the statute against usury.—Cram v. Hendricks, 7 Wend. 569; Kent v. Walton, 7 ib. 256; Rich v. Mather, 3 ib. 296; 15 Johns. 44; Rapelye v. Anderson, 4 Hill, 472; 3 Shep. Rep. 163. The bill in the hands of Wilson constituted a valid debt; he transfered it to the Bank in consideration of the judgments held by the Bank against Harris; the transaction was therefore a

mere exchange of one debt or chose in action for another, and could not constitute the offence of usury, although one demand was for a greater amount than the other, unless the whole was a mere device to cover up the intent with which the act was done. Nor can it be said that the bill was acquired by discount. To discount a bill or note is to buy it with money at a less sum than is payable on its face, but the mere exchange of one debt for another, or the purchase of a bill or note, paying for it in property, cannot in legal parlance be a discount of the bill.— 1 Bouv. Law Dic. 473. The Bank, therefore, acquired the bill, not by discount, nor by a contract tainted with usury, but obtained it with the view of securing a doubtful debt, due to the Bank from Harris, by an exchange of one debt for another. Such a contract the trustees had the power to make, and they may lawfully sue for the collection of the money due on it.

The only remaining question is, what amount was the Bank entitled to recover? The bill was endorsed for the accommodation of Bower & Co., the acceptors, and whilst in their hands created no valid debt. It amounts to six thousand dollars, and had twelve months to run before maturity, and was sold by Bower & Co. to Wilson, from whom the Bank purchased it, for five thousand dollars. That the contract, by which Wilson acquired the bill, was usurious, was decided in this case when it was before this court at a previous term, and we think it beyond controversy, that this decision was correct. To hold that the purchase of a bill or note, which at the time does not constitute a subsisting debt, at a discount beyond the legal rate of interest, *is not usurious*, would be to hold that the statute against usury could be entirely avoided by the form of the contract. But it is urged, that notwithstanding the contract between Wilson and Bower & Co. was usurious, and although the Bank can recover only such sum as Wilson could, yet, under the act of our Legislature against usury, the Bank can recover the actual amount of money advanced by Wilson, with lawful interest thereon, from the time the bill fell due. But this we think would be an entire misconstruction of our statutes against usury. Under the act of 1819, usury avoided the contract *in toto*, and no recovery could be had upon it; but by the act of 1834, the whole interest only is avoided, and by the express words of the act, the principal sum of money may be recovered. The amount

of the recovery upon a usurious contract is limited by the act to the principal sum loaned or advanced, and the courts cannot allow a recovery to a greater amount. The authorities refered to by the defendant's counsel show that when a sum of money is due by contract it bears interest; but if the contract be illegal, no recovery can be had upon it, unless by statute such recovery is allowed; and then the recovery must be had according to the act that allows it, and not in accordance with the general law relative to legal contracts. A usurious contract is still illegal, and a recovery cannot be had upon it, further than is allowed by the act of 1834, (Clay's Dig. 591,) and this is the amount of the principal sum alone. The court therefore erred in instructing the jury that the plaintiff was entitled to recover interest on the principal sum advanced by Wilson, from the time the notice was served upon the defendant.

In conclusion, we will add, that the decision heretofore made in this cause was conclusive of it, and if attentively examined, would have saved the trouble of again bringing it before this court, as well as the delay and expenses incident to it.

For the error we have pointed out, the judgment must be reversed and the cause remanded.