# Capital City Insurance Company v. Quinn.

*Action by Indorsee against Acceptor of Bill of Exchange.*

1.   *Acceptance. of bill of exchange; its effect.*—The acceptance of a bill of exchange drawn by one partner in favor of the partnership, in payment of a pre-existing debt due by the acceptors to the payees, imports an engagement on the part of the acceptor to pay the bill to the payees, or the rightful holder thereof, when, according to its terms, it becomes due and payable; and he thereby becomes the primary, principal debtor, his obligation being similar to that of the maker of a promissory note.

2.   *Transfer of negotiable instruments; how affected by usurious consideration.*—The rule obtains in this State, that a holder of a negotiable instrument, acquired by transfer or. indorsement before maturity, upon a usurious consideration, though in the usual course of business, and without notice, is not a *bona fide* holder; and, in his hands, the instrument is subject to the equities or defenses which would have been available against the antecedent parties.

3.   *Same; when not tainted with usury.*—A negotiable instrument, however, which is a valid debt in the hands of the original holder, may be bought or sold, as any other chattel, at its real or supposed value; and the transfer of such instrument, at a discount greater than the legal rate of interest, is not usurious, although the holder may indorse it, unless the transaction is a mere device to evade the statute against usury.

4.   *Same.*—Hence, where a bill of exchange, drawn by one partner in favor of the partnership, was accepted by a debtor of the firm, in payment of a pre-existing debt which he owed the partnership, and afterwards before maturity, the payees sold and indorsed the bill to a third party at a discount greater than the legal rate of interest, the transaction is not tainted with usury; and a payment by the acceptor to the partnership, made after maturity, and without notice of the sale and indorsement, is no defense to the bill in the hands of the indorsee. (*Saltmarsh v. Tuthill*, 13 Ala. 390, and *Carlisle v. Hill*, 16 Ala. 398, distinguished from this case.)

APPEAL from Lowndes Circuit Court.

Tried before Hon. JOHN MOORE.

This was a suit by the Capital City Insurance Company, a corporation, against Charles H. Quinn and John V. McDuffie,

partners trading under the firm name of C. H. Quinn & Co., and was founded on a bill of exchange, drawn by one Hall, a member of the firm of Wm. Hall & Co., on and accepted by the defendants, dated 12th August, 1880, and payable sixty days after its date to the order of Wm. Hall & Co., by whom it was indorsed to the plaintiff before maturity. The cause was tried on issues joined on the pleas of *non est factum*, and payment, the trial resulting in a verdict and judgment for the defendants. Said Hall was examined as a witness on behalf of the plaintiff, and testified that the bill of exchange sued on "was given by defendants in settlement of an account owing by them to Wm. Hall & Co., and that said bill was by said firm sold and indorsed to the plaintiff, in Montgomery, for cash before its maturity." One Joseph, the secretary and business manager of the plaintiff, was also examined as a witness by the plaintiff, and he testified that he "had discounted the said bill of exchange in the usual course of business, five days after its date, on to-wit, the 17th day of August, 1880; that he discounted said bill, when he purchased it for the plaintiff, at the rate of twelve *per centum per annum*;" that he placed it in the hands of bankers in Montgomery for collection; and that "after the maturity of the bill, he mailed a written notice to defendants, addressed to them at their post-office, informing them that plaintiff owned said bill." The evidence for the defendants tended to show that, on 20th December, 1880, the defendant McDuffie paid said bill to Wm. Hall & Co., taking their receipt for the payment (which was read in evidence); that when he paid said bill, he asked for it, and Hall told him that "one House, the father-in-law of said Hall, had it, but Hall & Co. were authorized to collect it;" and that "defendants, up to the time of the payment of said bill, had never been notified that said bill was owned by the plaintiff." Evidence was also introduced by both parties on the issue made by the plea of *non est factum*, which need not be here stated.

This being the substance of the evidence, "the court, among other things, charged the jury, that if they believe from the evidence, that plaintiff acquired the bill before maturity, by discounting [it] at a greater rate of interest *per annum* than eight *per centum*, then the plaintiff is not a *bona fide* holder, so as to exempt it from defenses which would have been available as between the original parties; and if they further believe from the evidence that defendants paid said bill to Wm. Hall & Co., without any information on their part, that said bill was the property of the plaintiff, in that event their verdict must be for defendants on the plea of payment." To this charge the plaintiff excepted, and it is here assigned as error.

HOUGHTON & TYSON, for appellant.

R. M. WILLIAMSON, *contra.*

BRICKELL, C. J.—In the absence of acceptance, the bill of exchange, having been drawn by one partner, payable to the partnership, would have been incomplete, legally speaking not a bill of exchange, until it was indorsed by the payees, entitling the indorsee to sue the drawer and all other antecedent parties. *Murdock v. Caruthers*, 21 Ala. 785. The acceptance of the bill, which seems to have been contemporaneous with its drawing, and is founded on a consideration of value—the pre-existing debt of the acceptors to the payees—imports an engagement upon the part of the acceptors to pay the bill to the payees, or the rightful holder thereof, when, according to its terms, it became due and payable. The acceptors became the primary, principal debtors, and their obligation was similar to that of the maker of a promissory note.—Story on Bills, § 252; 1 Daniel, Neg. Ins. §§ 532–37. Upon a failure to pay at maturity, there was no legal impediment to an action at law by the payees (if they had remained the holders) against the acceptors. The acceptance was, of itself, an admission by the acceptors of every thing essential to the existence of their liability as primary, principal debtors; of the right of the drawer to draw, and of the capacity of the payees to take and hold, or to indorse the bill.

A negotiation, or a transfer of a negotiable instrument, *bona fide*, before its maturity, in the usual course of business, for a valuable consideration, and without notice, is by the law merchant esteemed as a creation in the indorsee of an original and paramount right of action against the previous parties; and in his hands the instrument is discharged of all legal and equitable defenses to which it may have been subject before it came to him.—1 Amer. Lead. Cases, 420; *Pond v. Lockwood*, 8 Ala. 669; *Winston v. Westfeldt*, 22 Ala. 760. An exception to this general rule, obtaining in this State, is, that a holder, acquiring a negotiable instrument upon a usurious consideration, is not a *bona fide* holder; and, in his hands, the instrument is subject to equities or defenses which would have been available against the antecedent parties.—*Saltmarsh v. Tuthill*, 13 Ala. 390; *Saltmarsh v. P. & M. Bank*, 14 Ala. 668; *Carlisle v. Hill*, 16 Ala. 398.

The first inquiry arising upon the instruction given by the court below (and that instruction is the only matter now assigned as error) is, whether the contract by which the plaintiff acquired the bill from the payees, is usurious. It is not insisted that the original contract, that by which the acceptors became bound to pay the bill to the payees according to its tenor, was infected

with usury. That contract was fair in all its parts; there was no loan of money, or forbearance of a debt, for which any greater rate of interest was promised or exacted than that which the law authorizes. "A note or bill, which in the hands of the holder is a valid debt, may be bought or sold as any other chattel at its real or supposed value, and the transfer of such a note or bill at a discount beyond the legal rate of interest is not usurious, although the holder may indorse it, unless the transaction was a mere device to evade the statute against usury." *Saltmarsh v. P. & M. Bank*, 17 Ala. 768. This principle may be regarded as settled; though decisions to the contrary may be found, as it is supported by the great weight of authorities, which are too numerous for special citation. In *Munn v. Commission Co.*, 15 Johns. 44, Spencer, J., said: "The principle is too well settled to be questioned, that a bill, free from usury in its concoction, may be sold at a discount, by allowing the purchaser to pay less for it, than it would amount to at the legal rate of interest, for the time the bill has to run. The reason is obvious; as the bill was free from usury, between the immediate parties to it, no after transaction with another person can, as respects those parties, invalidate it. And I take it to be equally clear, that if a bill, or note be made for the purpose of raising money upon it, and it is discounted at a higher premium than the legal rate of interest, and where none of the parties whose names are on it, can, as between themselves, maintain a suit on the bill when it becomes mature, provided it had not been discounted, then such discounting of the bill would be usurious, and the bill would be void." This bill was not drawn or accepted for the purpose of raising money, and as we have said, after acceptance, was a valid debt, an available security in the hands of the payees, upon which, in their own names, if they had remained the holders, and there was default in payment, they could have maintained an action against the acceptors. The right to sell the bill, at such a discount from the sum expressed upon its face as they chose to accept, was as absolute and unqualified as their right to sell any other chattel which they may have owned. A sale at any rate of discount, unless the transaction originated in a treaty for the loan of money, of which the sale or discount was the consummation, is not a loan of money, or the forbearance of a debt, and is not consequently offensive to the statute against usury. Whether the transaction, if it had originated in a treaty for the loan of money, consummated by a discount of paper at a rate exceeding legal interest, would fall within the statute, is not a question in the case, upon which we intend intimating an opinion. The plain distinction between the present case and the cases of *Saltmarsh v. Tuthill*, 13 Ala. 390, and *Carlisle v. Hill*, 16 Ala.

398, to which we are referred by the counsel for the appellees, is, that in the hands of the holders negotiating the bills, in each of those cases, the bills were accommodation papers, intended for the raising of money, upon which the antecedent parties were not liable until after negotiation. As is said in *Powell v. Waters*, 8 Cowen, 669, a bill or note, to be the subject of sale, must have had a pre-existing vitality. If it had not; if the holder negotiating it can not bring an action upon it in the event of its non-payment, and this is known to the party acquiring it from him, the transaction is of necessity a loan of money, and not a sale, and if the loan is usurious, the lender is not a *bona fide* holder. The principle is thus stated by Mr. Parsons: "If no party to the note who is prior to the holder could himself bring an action upon it against the maker, then no prior party ever owned the note, and the holder, being the first owner, must be held to have loaned the money to the maker, through the prior parties, who were only agents of the maker; and on the other hand, if either prior party could have maintained an action, he owned the note and sold it to the holder."—2 Parsons on Bills, 426. The principle is stated in substantially the same language by Mr. Daniel in his work on "Negotiable Instruments" (1 Daniel's Neg. Ins. § 751); and of itself forms the test by which a sale of a bill or note at a greater rate of premium than legal interest, is distinguished from a usurious loan of money. *Williams v. Reynolds*, 10 Md. 57; *Durant v. Banta*, 3 Dutch. (N. J. Law) 624; *Gaul v. Willis*, 26 Penn. St. 259; *Saltmarsh v. P. & M. Bank*, 17 Ala. 761. The instruction to the jury, that the plaintiff was not a *bona fide* holder, because he acquired the bill from the payees, before maturity, at a greater rate of discount than eight *per centum*, was erroneous, and the exception to it was well taken.

Let the judgment be reversed and the cause remanded.