# Wildsmith v. Tracy et als.

*Bill in Equity to Enjoin Sale of Mortgaged Premises under Power Contained in the Mortgage.*

1. *Delivery of mortgage; what sufficient proof of.*—A mortgage being duly signed, acknowledged before a proper officer, and left, with the secured note, in the hands of the mortgagee and payee, this is a *prima facie* sufficient proof of delivery; and the rights of third persons, afterwards accruing, can not be affected by subsequent efforts to rescind the contract, or demands for the return of the papers.

2. *Negotiable paper; when holder entitled to protection.*—When the

[Wildsmith v. Tracy et als.]

consideration of a note is the sale and assignment of a patent right, and the payee obtains the possession by fraud without making the assignment, the fraud is available as a defense to the maker, as against the payee, or in the hands of a transferree if the note is not negotiable; but, if the note is negotiable, and is transferred before maturity, for valuable consideration, and in the usual course of business, the holder is entitled to protection.

3. *Same; duty of purchaser for valuable consideration, before maturity.* The purchaser of a negotiable note, before maturity, and for valuable consideration, is not bound to enquire of the maker whether there is any defect in it, or defense against it; but is entitled to protection, unless there was bad faith in his purchase or such gross negligence as is evidence of bad faith; and his purchase for value before maturity being shown, the *onus* of proving notice is on the maker.

4. *Discount of promissory note made for accommodation of payee; when usurious.*—When a promissory note is made for the accommodation of the payee, and is discounted for him at more than legal interest, it is usurious in the hands of the purchaser; but the principle does not apply to the purchase of a negotiable note before maturity, which was given in consideration of the sale and assignment of a patent, although the possession was obtained by fraud on the part of the payee, and without making the assignment.

5. *Assignment of note secured by mortgage carries with it the mortgage security.*—An assignment of a note secured by mortgage, carries with it the mortgage security, and authorizes the assignee to execute the power of sale therein contained.

APPEAL from the Chancery Court of Jefferson.

Heard before the Hon: THOMAS COBBS.

This was a bill in equity by Thomas Wildsmith and his wife, Muschoga Wildsmith, against William Tracy, C. C. Seals and James T. Fitzgerald ; and was filed on 13th May, 1884. The case made by the record is substantially as follows : On 2nd October, 1883, the complainants applied to C. Blackwood & Co., loan-brokers in Birmingham, to borrow for them $1,600 for one year, the money to be used to purchase the right to collect a royalty in the states of Kansas and Mississippi on a certain patent railroad switch of which the defendant, William Tracy, was the inventor and patentee. To enable Blackwood & Co. to obtain the money, the complainants executed their promissory note for $1,600, with two coupons for $64.00 each, the amount of the semi-annual interest, thereto attached. This note was dated 2nd October, 1883, and made payable October 2nd, 1884, to the order of the defendant, William Tracy, at the First National Bank, in the city of Birmingham, and on its face declares that it and its coupons are secured by mortgage of even date therewith ; and that on failure to pay the interest thereon the holder might, after the same had been due and unpaid for five days, collect both principal and interest at once. Contemporaneously with the execution of this note the complainants joined in executing to said Tracy the mortgage therein referred to as securing it. This mortgage was dated October 2nd, 1883, and was signed in the presence of

two attesting witnesses; its voluntary execution being acknowledged by the complainants, both together, and the wife upon a separate examination under the statute before a notary public, who also took the proof of the execution of the instrument by the oath of one Haynesworth, one of the subscribing witnesses. The testimony shows that the note and mortgage were, as soon as executed, delivered to Tracy directly, or his attorney for him, or to C. Blackwood & Co. to be negotiated for the benefit of Tracy, who, in consideration of the $1,600 to be raised on said note and mortgage was to convey to Wildsmith and wife the right to collect the royalty on said patent railroad switch. Tracy immediately, and in the presence of Wildsmith, and for the the purpose of facilitating its negotiation for his, Tracy's benefit, endorsed the note and assigned the mortgage in blank and handed them to Blackwood & Co. to negotiate and raise the money on them. Blackwood & Co. failed to negotiate the note and returned it to Tracy; and he, Tracy, about the 15th of October, 1883, sold and delivered the note and mortgage to the defendant C. C. Seals for the sum of $1,200. The complainants aver that before the negotiation of the note and mortgage to Seals they demanded the papers back from Tracy and notified him that they had annulled and rescinded the contract because he had failed to convey to them the patent right to collect the royalty on the "Tracy switch" as he had agreed to do. They also, on the 11th October, 1883, published in the "Daily Age" newspaper of Birmingham a notice warning the public not to trade for or buy the note and mortgage given by them to Tracy, on the ground that they had annulled the trade and that the consideration thereof had failed.

On the 24th March, 1884, Tracy's endorsee, C. C. Seals, sold the note and mortgage, endorsing the note and assigning the mortgage, to the defendant, J. T. Fitzgerald, for a cash consideration of $1,200 paid on that day. On the 2d April, 1884, the first interest coupon for $64.00 became due; and, default being made, payment was demanded and refused, and Fitzgerald then proceeded, under the provisions of the note and mortgage to declare the whole debt due and to advertise and sell the lands covered by the mortgage under the powers conferred by it. At this point complainants filed their bill, and the injunction therein prayed was granted, pending the final determination of the cause. The bill seeks to have the sale of the lands under the mortgage perpetually enjoined and the note and mortgage delivered up and cancelled on the ground that fraud was practiced on the complainants by Tracy in obtaining the note and mortgage from them. A decree *pro confesso* was taken against the defendant, Tracy, who left the

[Wildsmith v. Tracy et als.]

State shortly after transferring the note and mortgage to the defendant Seals. In their answers and testimony the said Seals and his co-defendant, Fitzgerald, both repudiate all knowledge, actual or constructive, of any defect or infirmity in the note and mortgage from the Wildsmiths to Tracy and aver that they acquired the same, before maturity, for valuable consideration, as innocent purchasers thereof. They both deny that they saw, or heard of the warning or notification published by the complainants in the "Birmingham Age" newspaper.

On final hearing, on pleadings and proof, the chancellor was of opinion that complainants were not entitled to the relief prayed for, and caused a decree to be entered, dissolving the temporary injunction and dismissing the bill. This decree is here assigned as error.

ROBERT H. STERRETT, for appellants.

J. J. GARRETT, contra.

CLOPTON, J.—The note and mortgage were signed, the execution of the mortgage acknowledged before a proper officer, and both were left in the possession of the payee of the note. The formal signing and acknowledgment of a conveyance, and possession of the grantee, are *prima facie* sufficient proof of delivery. Not only does a presumption of delivery arise on the facts, but Mrs. Wildsmith, one of the mortgagors, and the witness, Tegner, testify, in express terms, to a delivery, and the testimony of the other mortgagor shows, that it was intentionally put in possession of the mortgagee. The evidence leaves no room to doubt a delivery, sufficient to impart vitality; and subsequent efforts to annul the contract, or subsequent demands for the return of the note and mortgage will not defeat a prior completed delivery.

It is manifest on the evidence, that as between the complainants and the payee of the note, the defense is available; and would be sustained against the transferree if the note was non-negotiable. The *bona fide* sale and transfer of a negotiable note, before maturity, in the usual course of business, for a valuable consideration and without notice, creates in the transferree a paramount right of action against the maker; and frees and discharges the note of all defects, equities and defenses, to which it was subject before its acquisition by the holder.—*Capital City Ins. Co. v. Quinn*, 73 Ala. 558. The uncontradicted and unrebutted evidence shows, that Fitzgerald, the transferree, purchased the note before maturity, and paid a valuable consideration therefor without notice of any de-

[Wildsmith v. Tracy et als.]

fense or infirmity, or equity between the immediate parties. He was under no legal obligation to inquire of the makers whether there was any defense or any defect in the note. He testifies that he never saw or heard of the notice published in the newspaper; he did not reside in Birmingham where it was published; and such publication is not sufficient notice unless brought home to him by positive proof, or by proof of circumstances, which authorize the inference of knowledge. The transfer to Seals, bearing date one day prior to the officer's certificate of acknowledgment, but the same date as the mortgage, which was attested by two witnesses, is alone insufficient. Knowledge of circumstances, that would excite suspicion in the mind of a prudent man, or gross negligence, will not alone defeat the purchaser's right of action. Bad faith in the purchase, or such gross negligence as is evidence of bad faith must be shown. Fitzgerald having proved that he acquired the note for value before maturity, want of notice is presumed, and the *onus* is on the complainants to show notice.—*Capital City Ins. Co. v. Quinn*, 73 Ala. 558; *Murray v. Lardner*, 2 Wal. 110; 1 Dan. on Neg. Ints, § 796.

It is insisted that the transaction by which Fitzgerald acquired the note is usurious. If a note, which is made for the accommodation of the payee, to enable him to raise money, is discounted at a higher rate than legal interest, it is usurious. But was the note in question made for the accommodation of the payee, in the legal meaning of accommodation paper? From the allegations of the bill, and the evidence of Wildsmith himself, it appears that the note was given in consideration of the patent to the "Tracy Switch," which Tracy sold and agreed to assign to him. The blank transfer, endorsed on the mortgage, with the knowledge and consent of Wildsmith, tends to show his knowledge of Tracy's intention to raise money by the negotiation of the note, but not in the nature of a loan by Wildsmith, or by the person to whom it might be transferred. The transaction, as set forth in the bill, was that Tracy agreed to sell to complainants the patent for the States of Kansas and Mississippi for the sum of sixteen hundred dollars, for which amount the complainants were to execute a note and mortgage on land, and Tracy was to assign the patent for those States to them. In pursuance of this agreement, the note and mortgage was executed. The transaction had all the elements of a contract. It did not have its inception in a loan of money, or forbearance of a debt, but in the purchase of the patent. The note and mortgage were intentionally delivered, though such delivery, we do not doubt, was procured by the fraud of Tracy. He could have brought an action on the note, though such action could have been defeated by setting up the

[McMillan v. Wooten.]

defense of fraud. The distinguishing test is, whether the note never had an existence as between the immediate parties, because there was no intent to deliver, and no delivery in fact. The weight of the evidence sustains the conclusion that there was an intentional delivery, relying upon Tracy's promise and agreement to make the assignment of the patent; and, as we have said, there was a delivery in fact. Hence the efforts of complainants, on becoming dissatisfied, to rescind or annul the trade. When the maker of a note has intentionally issued it, subsequent efforts to rescind the contract can not defeat its prior inception, or destroy its negotiability, though the issue was procured by the fraud of the payee.—*Harper v. Wilson*, 63 Bart. 237. A note, which has an existence, in the hands of the payee, may be sold or bought, and its transfer, at a discount greater than the legal rate of interest, is not usurious, when not a device to avoid the statute. And when a purchaser for value takes a negotiable note, secured by a mortgage, discharged of all defenses, and freed from infirmity, and all equities, to which it was subject in the hands of any prior holder, the mortgage being a security and an incident, is in his hands entitled to the same protection accorded by the commercial law to the note.—*Saltmarsh v. P. & M. Bank*, 17 Ala. 768; *Noble v. Walker*, 32 Ala. 456; *Hawley v. Bibb*, 69 Ala. 52; *Carpenter v. Longan*, 16 Wal. 271.

An assignment of the mortgage with apt words to pass the legal title is not necessary. The assignment of the note carried with it the mortgage security; and the statute confers on any person who, " by assignment or otherwise, becomes entitled to the money thus secured," authority to execute the power of sale given to the grantee.—Code, § 2198.

Affirmed.