## POND, ET AL. v. LOCKWOOD, ET AL.

1. The act of 1828, places promissory notes in respect to the remedy, on the same footing with bills of exchange, and declares that they shall all be governed by the rules of the law merchant, &c.; consequently, where such a note is indorsed *before its maturity* in payment of *a pre-existing debt*, its collection may be enforced by the indorsee against the maker, though the latter may have a defence which implicates its validity, as between himself and the payee.

2. Where the maker of notes had received them several years previously, and delivered the notes of third persons in payment of them, it may be presumed that they were destroyed or otherwise cancelled, so as to let in secondary evidence of their contents, without a notice to produce them, in a controversy in respect to the substituted paper.

3. It is not competent for the makers of promissory notes that have been received of the payees by attorneys at law, in payment of demands in their hands for collection, to object that the latter transcended their authority, where their clients have approved the transaction.

4. Where a note is indorsed to one person, with the assent of all interested, in payment of debts due the indorsee and several others, the indorsee may maintain an action thereon in his own name, and no defence can be interposed to avoid its payment, which would not avail if the note had been indorsed and the suit brought in the names of all who were entitled to receive portions of the sum collected.

5. Where the *primary* object of the bill, and that which alone gives jurisdiction to a court of equity, is not made out, the complainant is not entitled to relief upon a ground merely *consequential,* and which contemplates a decree for a demand which may be enforced by action at law.

Writ of Error to the Court of Chancery sitting at Montgomery.

THE plaintiffs in error filed their bill, setting forth that on or about the first of March, 1838, the complainant, Pond, purchased of Robert Harwell a certain lot situate in the city of Montgomery, the number, size and location of which are particularly described. Harwell covenanted with his vendee that he was lawfully seized in fee of the premises, that they were free from incumbrances, and that he had good right to sell and convey the

Pond, et al. v. Lockwood, et al.

same : *Further*, that he would warrant and defend the premises to Pond, his heirs, &c. On the 16th March, of the same year, the wife of the vendor relinquished her right of dower—all which will appear by the deed of conveyance, which is exhibited with the bill.

To secure the amount of the purchase money, Pond made his three promissory notes, for the payment of the sum of three thousand three hundred and thirty-three dollars and thirty-three and one-third cents, each, payable on the third of March, *1839, 1840, 1841.* The note first falling due, has been paid, with the exception of the sum of more than eight hundred dollars ; for which a new note has been given, and which, as complainants are informed, and believe, has been transferred, &c. To secure the payment of the note which next fell due, mortgages have been executed, and this as well as the renewed note, are in the hands of persons unknown to the complainants. On the note which last matured, suit has been brought, and is pending in the County Court of Montgomery, in the name of John and Walter Lockwood, for the use of sundry persons, all of whose names are mentioned.

It is also alledged that Harwell, in 1835, mortgaged the premises (which he subsequently sold to Pond,) to Samuel Houston, now of the city of New-Orleans. That the complainants, nor either of them, were advised of the existence of this lien, until long after the purchase of Pond—in fact not until the first note was in part paid, and the renewed note given for the balance. Further, that Harwell is wholly insolvent, and will be unable to pay them any part of the damages they may sustain in the premises. The bill makes all the parties who are interested, adversely to the complainants, defendants to the same ; prays that the suit at law may be enjoined, that the contract between Harwell and Pond may be rescinded, &c.

The complainants afterwards filed an amended bill, in which they state that the plaintiffs in the suit at law became the assignees of the note in question, in payment of a precedent debt, and call upon them to state by what means, and when, Harwell became indebted to them, and whether the assignment was not made to pay a debt previously due. They also insist, that as they were not advised of the mortgage to Houston, at the time Messrs. Ball and Crommelin applied to them as the attorneys of the assignees

to learn if they had any sets off against the note, therefore they should not be bound or prejudiced in any manner by their admission that the note was good.

The greater number of the defendants answered the bill, stating each for himself, that on the first day of October, 1838, Harwell was indebted to them respectively, in sums which are particularly designated, that the claims of each of them were in the hands of Messrs. Ball & Crommelin for collection; that Harwell was then solvent, and offered to settle their demands by the transfer of good paper, among which was the note of the complainants. The amount of the note in question was so great, that their attorneys preferred it to other notes for small amounts, though the makers of the latter were entirely able to pay. In order to be certain that the complainants had no defence to make against the payment of their note, Messrs. Ball & Crommelin called upon Pond & Wadsworth before the conclusion of the negotiation with Harwell for the purchase and transfer of the same, and inquired of them if there were any sets off, or contingencies, about the payment of the note, and whether it would be paid at maturity. In answer to this inquiry, both Pond and Wadsworth informed Messrs. B. & C. that the note was perfectly good, that there were no sets off against it, and that it would be paid at maturity without defalcation. Influenced by this assurance, the parties interested in a recovery at law, became the proprietors of the note, by an assignment to the legal plaintiffs, on the 5th October, 1838. At that time Harwell was solvent, and could have satisfied the demands by the transfer of other paper, but he has since become insolvent, and been discharged as a bankrupt under the act of Congress of 1841, &c.

After the coming in of the answers, the plaintiffs filed a supplemental bill, in which they state that they were mistaken in supposing that the consideration for the assignment of the note was the payment of a precedent debt due by Harwell, to the persons who claim to be assignees thereof. They affirm that they have but recently acquired information of their mistake, and charge that the assignment was only made as a collateral security for the payment of a debt.

Some of the defendants, in answer to the supplemental bill, admit that the complainants may have been informed that the note in question was assigned as a collateral security for the pay-

ment of their demands against Harwell, but they positively deny the truth of such information, and reiterate the declaration, that it was received by them in payment of such debts, being first assured by Pond and Wadsworth, that they would be paid. Upon this assurance they were received by Messrs. B. & C. and the claims against Harwell at the same time delivered up to him, and his indebtedness cancelled. Some of the defendants filed amended answers, denying that the mortgage by Harwell to Houston is a subsisting lien, and insisting that the same has been fully paid off, and satisfied, before the original bill was filed.

It appears that the note, as to which the complainants are seeking to enjoin proceedings at law, was on its face made "negotiable and payable at the Branch of the Bank at Montgomery, Ala." and from proof found in the record, it is shown that the balance due on the first note, and the entire amount of the second, made by the complainants to Harwell, has been paid off since the commencement of this suit. *Further*, that about twelve hundred and seventy dollars was paid in 1841, in full satisfaction of the mortgage to Houston. Several depositions were taken at the instance of both parties, and exceptions taken to their admission by both parties, but it is unnecessary to notice these here.

A decree was rendered, dismissing the complainant's bill with costs.

T. WILLIAMS and I. W. HAYNE, for the plaintiffs in error, insisted—1. The assignment of the complainant's note was in payment of a pre-existing debt, and under the law merchant does not place the indorsees in such a condition that the makers can make no defence against them. It could not have been transferred in the usual course of trade, unless a present consideration passed to the indorser.

Taking a note in the *usual course of trade*, must mean that course of dealing which is usual among merchants, it cannot embrace a mere exchange of one paper security for another, of a solvent for an insolvent debtor; but it means a *valuable consideration, created* by a *present agreement* between the parties.

The suit at law is in the names of J. & W. Lockwood, for the use of themselves and others; they alone are the indorsees, while they insist that Harwell was only indebted to them in the sum of $399. Thus far only, do they claim to be indorsees, and as to

Pond, et al. v. Lockwood, et al.

the remainder of the note, they are mere trustees for the other persons for whose use the suit is brought: so that in no point of view, neither J. & W. L, alone, or associated with others are the legal holders of paper acquired in the regular course of trade.

It is insisted that the testimony of Harwell and the receipt of B. & Crommelin exhibited by him, show, that the note was not even transferred to pay precedent debts, but that it was taken by B. & C. as a collateral security for those debts in their hands for collection ; and consequently the complainants are not cut off from any defence which they could have made against the payee.

The testimony of Crommelin, which contradicts that of Harwell, is not responsive to the interrogatories proposed to him, and upon the exceptions to it, should have been rejected. His testimony should have been excluded, upon the further ground, that he testified as to notes given up to Harwell, stated their amounts, &c., though notice was given to produce them.

*Further,* B. & C. as attorneys at law, had no right to exchange their clients' notes with Harwell, and the transaction was not confirmed by the clients until after the bill in this case was filed. [See 3 Stew. Rep. 23; 6 Stew. & P. Rep. 340 ; 1 Porter's Rep. 212.]

The testimony shows that Pond was absent from the State at the time the negotiation between Harwell and B. & C. was consummated and for some time before and after ; so that he could not have admitted that there was no defence to the notes before Harwell transferred it.

A. F. HOPKINS, with whom was G. O. BALL, for the defendant in error, made the following points : 1. The recovery of a note in the hands of a *bona fide* holder, who has received the same for a valuable consideration, before maturity, and without notice, cannot be defeated by the failure of consideration, or sets off against the original payee if it is negotiable and payable in Bank. [6 Porter's Rep. 384 ; 9 Id. 451 ; 2 Ala. Rep. 367 ; 3 Id. 297 ; 6 Ala. Rep. 156 ; 1 Munf. Rep. 533 ; 9 Cranch's Rep. 9 ; 16 Pet. Rep. 1.]

2. Where a debtor on application admits a debt to be justly owing, and upon the strength of such admission, the person thus applying takes a transfer thereof, the debtor is estopped from

setting up a failure of consideration, even if it is taken for a precedent debt, or as security for a precedent debt. [19 Wend. R. 563 ; 21 Id. 94, 172 ; 21 Id. 499.] And if a note is purchased on a promise by the maker to pay, he will be compelled to pay at all events. [2 Ala. Rep. 514-9 ; 1 B & Ad. 142 ; 2 Yeates' Rep. 541 ; 3 C. & P. Rep, 136 ; 16 Sergt. & R. Rep. 18.]

The mortgage from Harwell to Houston being on record, Pond was charged with a constructive notice of its contents as against the complainants, who became *bona fide* holders of the note before its maturity, without notice of any objection to its payment by the makers.

COLLIER, C. J.—In Swift v. Tyson, 16 Peter's Rep. 1, the Court say, there is no doubt that a *bona fide* holder of a negotiable instrument, for a valuable consideration, without any notice of the facts which implicate its validity, as between the antecedent parties, if he take under an indorsement made before the same becomes due, holds the title unaffected by those facts; and may recover thereon, although as between the antecedent parties, the transaction may be without any legal validity. *And further,* where one acquires negotiable paper before it is due, he is not bound to prove that he is a *bona fide* holder for a valuable consideration, without notice ; for the law will presume such to be the fact, in the absence of all rebutting evidence. It is therefore incumbent on the defendant to make satisfactory proof to the contrary, and thus to overcome the *prima facie* title of the plaintiff.

We have repeatedly held, that a note negotiable and payable in Bank, and assigned before due, is not subject to a set off against the original payee. [2 Ala. Rep. 367 ; 3 Id. 297 ; 6 Ala. Rep. 156.] In Smith v. Strader, Perrine & Co. 9 Porter's Rep. 451, after citing the act of 1828, (Clay's Dig. 383, § 11,) which declares that the remedy " on bills of exchange, foreign and inland, and on promissory notes payable in Bank, shall be governed by the rules of the law merchant," &c., it is said, " We apprehend therefore, that the legislature intended to make promissory notes payable in Bank, *negotiable* as *inland bills of exchange,* and to be governed and regulated by the same law." See also, 6 Ala. Rep. 353.

In the Bank of Mobile et al. v. Hall, 6 Ala. Rep. 639, the ques-

tion directly arose, whether the indorsement of a negotiable promissory note before its maturity, in payment of a pre-existing debt, or as indemnity against the consequences of a suretyship, invests the holder with a right to recover, which cannot be defeated by proof of a latent equity between the payee and the makers. We there held, that the receipt of a negotiable instrument in payment of a precedent debt, was in the usual course of trade, and if received under the circumstances supposed, could be enforced by the indorsee. "It appears to us," (say the Court,) "there is no sensible distinction between receiving a bill in payment of a pre-existing debt, and purchasing it with money or property. In either case, the consideration is a valuable one ; and all the reasons which apply to protect the holder against latent equities between the original parties, of which he had no notice, apply with the same force in the one as in the other." [See also, Brush v. Scribna, 11 Con. Rep. 338.] But where the transfer is made to indemnify the indorsee, and save him harmless from loss on his suretyship, it is not a transaction within the usual course of trade so as to protect the holder from a defence that might have been set up against the payee. [See also, Cullum v. The Branch B'k at Mobile, 4 Ala. Rep. 21.]

It is objected by the defendant's counsel, that it does not appear that the note in question was assigned by Harwell in payment of a debt, but was merely delivered to Messrs. Ball & Crommelin as a security for sundry demands which, as attorneys at law, they held against Harwell. This is denied by the defendants, who have answered, at least according to their information and belief. Harwell's deposition was taken at the instance of the complainants, and fully sustains the objection. There can be no question, but this witness testifies what he honestly believes, but it is probable that his memory is at fault. Be this however as it may, the consideration of the assignment is a fact put in issue by the pleadings, and it is incumbent upon the complainants to show such a state of facts as would authorize them to set up the mortgage by Harwell to Houston, and perpetually enjoin a recovery to the extent of the amount which Pond has paid thereon, to discharge the incumbrance. Crommelin expressly negatives the testimony of Harwell, and thus creates an *equilibrium* of proof. In this posture of the case, it may be regarded as if no evidence had been taken upon the point,

and the answers must, according to the practice in Chancery be considered as true.

It was supposed by the plaintiff's counsel, that the testimony of Crommelin was gratuitously given; that is, that it was not called for by the questions propounded to him. However this may be, in respect to some part of his testimony, we have not thought it necessary to inquire; for we think it clear that the interrogatories directly called for a disclosure of the inducements to the transfer of the note, and the circumstances under which it was made.

The failure to produce the notes delivered to Harwell in exchange for the complainant's note, did not authorize the exclusion of Crommelin's testimony. These notes he affirms were paid off by the exchange, and may, especially as the transaction has been consummated for several years, be presumed to be destroyed, or otherwise cancelled. Besides a notice to produce them would have been unavailing; as Harwell's testimony shows that they are not in his possession.

It is not competent for the complainants to object, that Ball & Crommelin could not receive the note in payment of demands placed in their hands for collection. Perhaps it might be competent for their clients to refuse to abide by what they have done, and to insist upon charging Harwell upon his indebtedness, or making them liable for a breach of duty, but such an objection by any third person is not permissible; especially after the exchange has been ratified by the clients.

In respect to the objection that all the creditors of Harwell who are interested in the note are not made its indorsees, we think it cannot be supported. The consideration for the indorsement was equal to the note, viz: the amount of the debts due the indorsees, and the other creditors whose debts were thus extinguished, The latter would be entitled to receive their demands when collected; and the indorsees, should they collect it, would hold that amount in trust for them. The fact that *all those* who are entitled to the proceeds of the note, are not made its *legal proprietors*, cannot enlarge the grounds upon which the complainants may resist its payment. The assignment was certainly made in the due course of trade, for an adequate consideration, and we must intend, in good faith; as there is nothing in the record from which it can be inferred that Messrs. Ball & Cromme-

lin, or their clients, had notice of the equity set up by the complainants, until several years after the transaction took place.

The object of the bill was to enjoin the judgment against the complainants, and if unsuccessful in this, then to recover of Harwell the amount they had paid under the mortgage to Houston. In respect to the latter, a Court of law is competent to afford relief, and Chancery could only interpose upon the ground that where a person goes into equity for one purpose, that Court may take jurisdiction of the entire case, and do complete justice between the parties. It cannot be regarded as a primary ground of equity, but at most consequential only. As to the principal matter, we have seen, the complainants have failed to make out their case, and it is shown that the law is in favor of the defendants. This being so, there is nothing on which to rest the jurisdiction of the Court, as to the prayer for relief against Harwell. If it could be entertained, because upon the face it appeared unobjectionable, then it would be competent to transfer to equity many cases of pure legal cognizance, by making them dependent upon a supposititious statement of facts. This would be a state of things not to be endured, and need but be mentioned, to show that the Chancellor properly refused to render a decree against Harwell.

Other questions are raised upon the record, and were discussed at bar, but the view taken is decisive of the case, and we will only add that the decree is affirmed.