## BLOODGOOD *vs.* GRASEY.

[SUIT FOR FREEDOM.]

1. *Conclusiveness of judicial decisions.*—A judicial decision is to be regarded as conclusive, not only of the point presented in argument and expressly decided, but of every other proposition necessarily involved in attaining the conclusion expressed.

2. *Proof of foreign law by adjudged cases.*—A decision of the highest judicial tribunal of a foreign State, construing one of its statutes, is to be received elsewhere as an authoritative exposition of the construction of the statute ; and its weight or authority is not affected by the fact that it was made after the transaction elsewhere in controversy arose, or after the persons to be affected by it had left the State.

3. *Construction of Maryland statute respecting emancipation of slaves.*—The statute of Maryland respecting the emancipation of slaves, enacted in 1752, and continued in force by successive statutes until 1796, requires two attesting witnesses to a deed providing for the prospective emancipation of slaves.

4. *Estoppel by judgment.*—A judgment in a former suit for freedom, in favor of the petitioner's mother, rendered after the birth of the petitioner, does not operate an estoppel on one claiming under the defendant therein.

APPEAL from the City Court of Mobile.

Tried before the Hon. ALEX. McKINSTRY.

THIS was a petition for freedom, under section 2049 of the Code, by Grasey and her children, who are described in the proceedings as "persons of African descent," against Hildreth Bloodgood and his wife, who claimed them as slaves. The petitioners claimed their freedom under a deed of manumission from Josias W. Dallam to the maternal grandmother of Grasey, with other slaves ; which was executed in Maryland, and of which the following is a copy :

"To all whom these presents shall come, Greeting : I, Josias W. Dallam, of Harford county, in the State of Maryland, for divers good causes and considerations me thereunto moving, do hereby declare free, manumit and enfranchise, the negroes following, to-wit : *Cromwell*, to be free at the expiration of *too* years ; *Malborough*, at the expiration of four years ; *Orange*, at the expiration of five

years; *Lemon*, at the expiration of eleven years; *Hannah*, at the expiration of thirteen years; *Nance*, at the expiration of fifteen years; *Sook*, at the expiration of seventeen years from the date of this manumission. All the children, or children's children, that may *desend* from said negroes, and be born in slavery from the date hereof, shall be free at twenty-three years of age. Hereby acknowledging the said negroes discharged from all claim of service, and right of property whatever, from me, my heirs, executors and administrators, at the periods above specified. As witness my hand and seal, this thirteenth day of March, in the year of our Lord one thousand seven hundred and eighty-seven."

           "Josias Wm. Dallam, [seal.]"

"Attest: John Archer."

The petitioner Grasey was the daughter of one Matilda, who was the daughter of Hannah, one of the slaves mentioned in the deed. To prove the validity of the deed of manumission, the petitioners read in evidence a certified copy of a statute law of Maryland, which was enacted on the 23d June, 1752, and continued in force, by successive statutes, until 1796; an extract from which, " containing all the provisions of the law of Maryland on the subject of the emancipation of slaves, so far as pertinent to the case, that was introduced in evidence," is made an exhibit to the bill of exceptions, and is as follows:

"An act to prevent disabled and superannuated slaves being set free, or the manumission of slaves by any last will and testament; approved 23d June, 1752.

" * * * And to the end that hereafter there may be an uniform and regular manner of granting freedom to slaves, *be it likewise enacted*, that where any person or persons, possessed of any slave or slaves within this province, who are or shall be of healthy constitutions, and sound in mind and body, capable by labor to procure to him or them sufficient food and raiment, with other requisite necessaries of life, and not exceeding fifty years of age; and such person or persons, possessing such slave or slaves as aforesaid, and being willing and desirous to set

free or manumit such slave or slaves, may, by writing under his, her or their hand and seal, evidenced by two good and sufficient witnesses at least, grant to such slave or slaves, his, her or their freedom; and that any deed or writing, whereby freedom shall be given or granted to any such slave, which shall be intended to take effect in future, shall be good to all intents, constructions and purposes whatsoever, from the time that such freedom or manumission is intended to commence by the said deed or writing, so that such deed and writing be not in prejudice of creditors, and that such slave, at the time *of* such freedom or manumission shall take place or commence, be not above the age aforesaid, and be able to work and gain a sufficient *livelyhood* and maintenance, according to the true intent and meaning of this act; which instrument of writing shall be acknowledged before one justice of the peace, of the county wherein the person or persons granting such freedom shall reside; which justice shall endorse on the back of such instrument the time of the acknowledgment, and the party making the same, which he or they, or the *partys* concerned, shall cause to be entered among the records of the county court where the person or persons granting such freedom shall reside, within six months after the date of such instrument of writing; and the clerk or clerks of the respective county courts within this province shall, immediately upon the receipt of said instrument, endorse the time of his receiving the same, and shall well and truly enroll such deed or instrument, in a good and sufficient book in folio, to be regularly alphabeted, in the names of both parties, and to remain in the custody of said clerk or clerks for the time being, among the records of the respective county courts; and that the said clerk or clerks shall, on the back of every such instrument, in a full, legible hand, make an endorsement of such enrollment, and also of the folio of the book in which the same shall be enrolled, and to such endorsement set his hand; the person or persons requiring such entry paying the usual and legal fees for the same. And be it likewise enacted, that a copy of such record, duly attested under the seal of such office, shall,

at all times hereafter, be deemed, to all intents and purposes, good evidence to prove such freedom. And to the end that this act may be duly observed, the justices of every county court within this province respectively shall, at their respective county courts to be held in March yearly, give in charge to the respective grand juries of each respective county to inquire into any breaches made contrary to this act. This act to continue for three years, and to the end of the next session of assembly which shall happen after the expiration of the said three years."

When the petitioners offered in evidence the certified copy of the deed on which they based their claim to freedom, the defendants objected to its admission, on several grounds, one of which was, "that said deed was not evidenced by two witnesses, as required by the said Maryland statute of 1752;" and, "to show the judicial construction of said act by the courts of Maryland," read to the court the reports of the following adjudged cases before the court of appeals of Maryland: Negro James v. Gaither, 2 Har. & John. 176–78; and Young v. State of Maryland, 7 Gill & John. 253–62. On the authority of these decisions, construing the Maryland statute, the defendants objected to the admission of the deed offered by the petitioners, and moved the court to exclude it from the jury; but the court overruled the objection, and the defendants excepted.

The petitioners, having adduced evidence tending to show that Grasey was the daughter of Matilda, was born about the year 1820, was run off from Kentucky by a son of Mrs. Molly Townsend, against whom Matilda had previously instituted a suit for her freedom, and that the defendants in this suit claimed by purchase under said Townsend,—offered in evidence a certified transcript of the Kentucky suit, wherein the petitioner claimed her freedom under the deed now in controversy; which suit was commenced on the 4th May, 1831, and was decided in favor of the petitioner. The defendants objected to the admission of this transcript, "as not being competent evidence against them for any purpose;" further, "that it was not admissible, except as evidence that Matilda

recovered a judgment of freedom in that suit;" and "that it was not admissible, except as evidence that Matilda, at the time of the impetration of the writ, was entitled to her freedom." The court overruled each of these objections, and admitted the transcript; "remarking, that the jury would be instructed as to its effect, when the evidence was closed;" to which rulings of the court the defendants excepted.

Other objections were made to this transcript, and other questions as to the admissibility of evidence were made; none of which, however, require special notice.

The court charged the jury as follows:

"1. That the deed of Josias W. Dallam was, under the laws of Maryland, valid and effectual to entitle the negro Hannah, therein mentioned, to her freedom at the expiration of thirteen years from its date; that any child of Hannah, born during that interval of thirteen years, would be entitled to her freedom at twenty-three years of age; that if the jury believed that Matilda was the child of Hannah, and was born during the said period of thirteen years, she would be entitled to her freedom at the age of twenty-three years; that if Grasey was the child of Matilda, and was born before Matilda reached twenty-three years of age, she would be entitled to her freedom at the age of twenty-three, and her children, born after that time, would be free; and that if Grasey was born after Matilda had reached the age of twenty-three, then she was born free, and she and all her children are entitled to their freedom.

"2. That if the jury believed that the defendants held the petitioners as slaves under Molly Townsend, then the judgment in favor of Matilda against said Molly Townsend would be evidence against them; that if Grasey was born after that judgment, then these defendants are bound by that judgment; but, if she was born before that judgment, then it is not conclusive, but is a circumstance, or part of the chain of evidence in the cause, which the jury will take into their consideration."

The defendants excepted to each one of these changes; and they now assign them as error, together with the

rulings of the court on the evidence, and other matters which require no particular notice.

P. HAMILTON, for appellant.—1. The deed of Josias Wm. Dallam, even if the original had been duly proved and offered in evidence, should not have been permitted to go to the jury, because it did not comply with the act of 1752. The deed is attested by *only one witness :* the law requires, it "*shall be evidenced by two good and sufficient witnesses at least.*" The language of the law is plain. The object declared is, to provide a uniform and regular mode of manumission. The law points out that mode. Any person, desirous of granting freedom to his slaves, may do so, if the slaves are healthy, capable of maintaining themselves, and under fifty years of age, by writing under his hand and seal, evidenced *by two good and sufficient witnesses at least.* This is the general provision, applicable to all cases of manumission : then comes the case of a manumission *in futuro.* In such case, the act shall be good at the time appointed, if then not in prejudice of creditors, and the slave not above fifty years old, and able to maintain himself. Then come the general provisions, that the instrument of freedom shall be acknowledged before a justice of the peace, who shall endorse the date of the acknowledgment, and then be registered among the records of the county court. There is no intention on the face of the act to make any different formalities, in the cases of a present and future manumission. The same mode of proceeding is required in the two cases. That of future freedom is mentioned by way of parenthesis, and to avoid what might be a difficulty as to the age of the negro ; whether it applied to the date of the deed, or to the time when the right to freedom accrued. There is no punctuation in the act, to point out *two classes* of cases. The act speaks in one sentence, and points out the one mode of proceeding for all cases. And such is the construction of this act by the court of appeals in Maryland. Negro James v. Gaither, 2 Har. & J. 176 ; 7 G. & J. 262 ; 5 Howard's R. 72. The act of 1796 on this subject is the same as that of 1752.—See Laws of Maryland ; 5 How. R.

Bloodgood v. Grasey.

72; 4 Cranch C. C. R. 189. The decisions 2 H. & J. and 4 Cranch, were upon manumissions to take effect *in futuro.*

The judicial decisions of a State, upon its own statutes, will be received in the courts of another State, as forming part of the law itself: they are binding and conclusive. 3 Sandf. R. 416; 3 Strob. Eq. 263; 3 Zabriskie's R. 590; 10 Wheat. R. 152; 11 Law Rep. 207; 12 Wheat. R. 153; 4 Pet. R. 127; 5 *ib.* 151; 6 *ib.* 291; 1 Brock. R. 539.

With regard to the manumission of slaves, the law has uniformly been declared to be, that the provisions of the statute must be strictly complied with.—4 Harrison's R. 173; 1 Penning. R. 10; 6 Rand. R. 561; 1 *ib.* 15; 6 Munf. R. 191; 5 H. & J. 111; 2 Leigh R. 300. For it is not the policy of the law to manumit slaves.—11 Mo. R. 193. And in Maryland, the strictest adherence to the letter of the law has been enforced.—5 How. R. 72. In this case, the deed is evidenced by only one witness: and that being so, under the law established in Maryland, the deed offered in evidence was not admissible, and should have been excluded; or, if admitted, the court should have charged the jury, the petitioners were not entitled to their freedom.

2. As to the admissibility and effect of Matilda's suit for freedom in Kentucky: Mr. Bloodgood was no party to that suit, nor was any privity established between him and Mrs. Townsend. The petitioner's counsel did not undertake to establish it. They promised only to connect the possession of Mrs. Townsend, with that of the party next before Bloodgood: but even that was not done. They did not show whence Bloodgood acquired his possession. They made a show of proof down to a Mr. Cheesborough. Now the burthen was on them. They did not show that the vendor of Hazard was the man Allen Townsend, who took the negroes from Kentucky. A year after the time of their removal, a man of the same name, but apparently from Washington county, in Alabama, sold the slaves to Hazard—1 S. & R. 175; 1 Wheat. R. 6; 2 Cranch R. 23. It is conceived the court below erred in permitting the record to be admitted for any pur-

pose, beyond showing the fact that Matilda had in a certain suit recovered a judgment of freedom, or that she was entitled to her freedom at the time the suit was brought. The statement of the testimony contained in the transcript should not have been admitted. It does not appear that the substance of all the witnesses swore was therein contained.—22 Ala. R. 700. As to the evidence of Drane, Bailey and Smith, it is perfectly clear that all was not there. Their evidence of a particular matter only is stated; and that is given as the conclusion of the party, who prepared the bill of exceptions. No original depositions were produced, nor were copies of such originals produced, No witness was introduced to prove that he had made copies of such depositions, and that the copies were correct. Admitting that, if such had been done, the evidence was competent, still the court has no certainty that it has got copies of their evidence, or a statement of the substance of their evidence. The statement of evidence is not contained in the judgment of the court. We have here nothing but a certificate of the clerk that the transcript contains " as full a transcript of the records and proceedings as the same remain on file in his office." This evidence appears only in the bill of exceptions. We don't know what the law of Kentucky is, with regard to bills of exceptions. It is a subject altogether of statute regulation, not known to the common law. It is prepared for a particular purpose, and for that purpose only forms a part of the record. A statement contained in such a document cannot be made evidence generally; much less can a mere copy of the document be made evidence in another cause, between other parties.

3. What is the effect of the deed of 1787 on these petitioners? They were never in the possession of the grantor : there was no proof that they were ever in Maryland. Admitting they came from Kentucky, we do not know what was their status by the laws of that State. 12 Ala. R. 728. Being of African descent, they are to be presumed slaves : it will not be presumed the laws of another State permit emancipations.—7 Mo. R. 197; 2 Rob. Va. 58; 11 Mo. 193; or that they forbid slavery.

Bloodgood v. Grasey.

9 Mo. R. 3. Negroes are slaves here, and their emancipation is prohibited. These petitioners claim freedom, under a grant to their grand and great grand mother in 1787. They have been held slaves in this State, the mother since 1831, twenty-five years, and the children, all their lives. The deed gives freedom to all the descendants of Hannah, after they reach twenty-three years of age. What is the effect of that deed in Kentucky? We do not know. What is its operation here? Does the law of this State recognize this mongrel status? And are its free citizens liable to be defrauded of their property, by stale demands resting on old deeds made in foreign jurisdictions, of which they cannot be advised? As long as property in slaves is recognized, protection should be extended over that property. The right to such property is based on possession. The origin of that possession cannot be inquired into. If it can, the property no longer exists, for it cannot have commenced in right. How long back must the possession have existed? Or is there no prescription to the claim? There is a prescription, of necessity, to the general right. Is there none in particular cases? The general limitation of twenty years should apply. It is no hardship to the slave, for he knows no better condition; and the general good of the country demands that the mixture of free and bond should not exist in the community, and certainly that this mongrel state of neither bond nor free should not be tolerated. Such certainly is the declared policy of the State of Alabama.

Jno. T. Taylor, and A. J. Requier, *contra.*—1. The Maryland statute does not require any witness at all to a deed of prospective manumission. It evidently provides for two classes of deeds: those which take effect *instanter*, and those which take effect *in futuro;* and two witnesses are required to the former only. This is the evident meaning and intention of the act; and no plausible objection to this construction, looking only to the act itself, could be urged. The deed under which the petitioners claim their freedom, providing for prospective

emancipation of the slaves named, and being duly acknowledged and recorded as the statute directs, is sufficient to establish their claim.

2. The appellants seek to avoid this construction of the statute, by proof of a different construction by the courts of Maryland, as shown by the reported case of James v. Gaither, 2 Har. & John. 176; and the question is thus presented, whether that decision estops this court from examining and construing the statute for itself. It is admitted, that this court would yield to the authority of the Maryland court, if the very same point was presented in each case, was actually considered and decided by the former, and was necessary to the decision; but it is insisted, that all these facts must appear, to make such decision conclusive on this court. The courts of one State, in construing the statutes of another, will look to the judicial decisions of the latter, not as constituting an estoppel, but on principles of comity, and on the supposition that the courts of each State are the best judges of the proper construction of their own local laws. Hence, to give weight and authority to such decisions, the very point in issue must appear to have been considered—to have been in the mind of the court, and actually decided. This doctrine is held by the courts of Maryland, and by other courts almost universally.—Matthews, Finley & Co. v. Sands & Co., 29 Ala. 136; 5 Maryland, 489; 16 Howard, 286; 1 Wheaton, 290; 10 ib. 164; 11 ib. 369.

What was the point actually considered and decided in the case of James v. Gaither? That case was decided at an early day, when the decisions of the courts were taken down in short hand by the reporters. No opinion appears to have been delivered by the court; only saying, "judgment affirmed." To ascertain the points actually presented and decided, recourse must be had to the argument of counsel. The point presented by the argument of the appellant's counsel was, "whether the court would give a rigid or liberal construction to the act;" he insisting that, though but one witness signed the deed, a liberal construction would allow him to prove by parol that another was actually present, was called on to witness the

deed, and did witness it. This position seems to have been denied by the adverse counsel. All the authorities cited by either were upon the single point, whether such parol evidence was admissible; and the head note of the reporter confines the decision to that single point. There is nothing, then, either in the decision itself, or in the report of it, which can make it conclusive as an authority on the question presented in this case.

3. It appears that the negroes had left Maryland before that decision was made, and that the petitioners in this case never were in that State. Can the State of Maryland pass a law, or her courts declare the law, so as to affect property beyond her jurisdiction? Suppose citizens of Alabama should go to Maryland, and there purchase slaves—slaves in fact under a proper construction of their laws—and bring them to this State; could the courts of Maryland so construe those laws as to set free all these slaves, and bind our courts to follow their construction? Or suppose, as in this case, a slave is legally emancipated in Maryland, under the proper construction of their existing laws, and is in fact a free man, when he is kidnapped, or comes voluntarily into Alabama; could the courts of Maryland, by an erroneous construction subsequently given to those laws, enslave him, and authorize a citizen of Maryland to come here and seize him? Or could the freesoil judges of Pennsylvania make a decision to-day, so construing their old statutes of 1700 on the subject of slavery as to set free all the slaves, with their descendants, that have been brought into the southern States for the last fifty or one hundred years?

4. The defendants are strangers to the deed, and cannot be heard to impeach it, although its attestation may be defective.—Smith v. Houston, 16 Ala. 111; Herbert v. Hanrick, 16 Ala. 599; 7 Gill & J. 96. They are shown to derive title from Molly Townsend, who, as to these petitioners, was a mere trespasser and wrong-doer, holding under no one.

5. The judgment of the Kentucky court, establishing Matilda's claim to freedom, is in the nature of a proceeding *in rem*, and binding on the whole world.—1 Greenl.

38

on Ev. § 525; Smith's Leading Cases, vol. 2, p. 85. But, regarding it only as a proceeding *in personam*, it is binding on the defendants, who are privies of the defendant in that suit.

WALKER, J.—The appellees claim freedom under a deed of manumission, made in the State of Maryland, in 1787. The deed attempts to provide a prospective emancipation, and is attested by only one witness. The law of Maryland, authorizing such emancipation, was a statute adopted in 1752, which was given in evidence. It is a question in this case, whether that act requires the attestation of two subscribing witnesses to a deed of prospective emancipation, or whether that requisition is confined to deeds, the operation of which is contemporaneous with their delivery. The decision of this question depends upon the construction of the statute.

The law given in evidence was construed by the court of appeals of the State of Maryland, in 1807, in the case of negro James v. Gaither, 2 Harris & Johns. R. 176. The decision in that case was introduced as defensive testimony in this cause by the appellant, and is a part of the record. To show that that decision should not influence the judgment of this court, in the construction of the Maryland statute, it is argued, that the *precise point* now in controversy was not decided, or in the mind of the court; that it was made long after the execution of the deed, and when the right of property in the maternal ancestor of the petitioners was exercised in another State; and that the decision is manifestly incorrect. We proceed to consider the points thus made in the order in which they are stated.

In negro James v. Gaither, *supra*, the sole defect in a deed of prospective emancipation was, that it was attested by only one witness. The county court, in which the petition was filed, sustained the deed. The general court, on appeal, reversed the judgment of the county court; and the court of appeals, on appeal from the general court, affirmed its decision without delivering an opinion. The report of the case contains a brief statement of the argu-

ments in the case.   The argument for the appellant seems
to present to the court only the point, that the statute
required merely that two persons should witness the exe-
cution of the deed; not that they should subscribe their
names to it as attesting witnesses.   It was contended in
the discussion of this case, that the only point decided,
or in the mind of the court, was that made in argument.
The result of that position would be, to take from judi-
cial decisions, where there is no opinion, the authority of
an adjudication upon all propositions which were too
plain, or too well recognized by the bench and bar, to be
questioned; and thus the universal and undisputed sanc-
tion of a legal principle would become a barrier to proof
by judicial decisions of its existence.   It better accords
with reason to regard a judicial tribunal as asserting, and
intending to assert, every proposition which is indispens-
able to the conclusion expressed, and necessarily involved
in it; at least when the contrary does not appear.   There
was one subscribing witness to the deed in the case of
negro James v. Gaither.   If one subscribing witness was
sufficient in the judgment of the court, an affirmance was
impossible.   The proposition that one subscribing witness
was not sufficient, is necessarily involved in the conclu-
sion expressed; and as nothing to the contrary appears,
it must be regarded as decided by the court.   That the
counsel placed his argument upon the ground that the
statute did not require the *two witnesses* who " *evidenced* "
the execution of the deed to be *subscribing witnesses*, proves
rather that the necessity of two witnesses was a recog-
nized and conceded point of law in Maryland, than that
the court passed over, without observing and deciding, the
proposition which was directly and necessarily involved
in the judgment given.

The effect of the Maryland decision was considered by
the Virginia court of appeals, in the case of Thrift v.
Hannah, 2 Leigh, 300.   In that case, as in this, the valid-
ity of a deed of prospective emancipation, made in Mary-
land, and attested by one witness, was controverted; and
the Maryland decision was presented as an authoritative
exposition of the meaning of the statute.   The court,

although it denied the correctness of the construction adopted in Maryland, yielded to the decision as an authoritative adjudication of the point, that two subscribing witnesses were necessary to sustain the deed. The supreme court of the United States seems to have taken the same view of the Maryland decision, in the case of Miller v. Herbert, 5 Howard, 72. We are thus, by adjudged cases, fortified in the conclusion, that the Maryland court of appeals has construed the statute as requiring two subscribing witnesses to a deed of prospective emancipation.

It is true, that the Maryland decision given in evidence was made about twenty years after the execution of the deed, and about three years after Matilda, the mother of one, and the grandmother of the other petitioners, had been carried to Kentucky; but these facts do not detract from the weight of the decision as evidence in the case. The validity of the deed made in 1787 is to be determined by the law of Maryland as it then existed. The statute was not necessarily all the law upon the subject. The construction placed upon the statute was also a matter of law; and it was permissible to show, as well the construction placed upon the statute, as the statute itself.—Walker v. Forbes, at the last term. If the decision made the law, as the statute does, it would be totally irrelevant to the case; because contracts must stand or fall, not by subsequent, but by existing law. Judicial opinions, however, do not make the law. Their office is simply to declare the law as it existed before. They are not, in themselves, law, but evidence of what the law is. There can be but one right construction of the statute. That construction was the same when the statute was adopted, as when the decision was made. The Maryland court of appeals simply declared that construction by the judgment which it gave, and is evidence of what is the proper construction. The construction, which the decision evidences, was the law from the adoption of the statute.

In the case from 2 Leigh, *supra*, the deed made before the Maryland decision was held void under its influence, notwithstanding the negroes, whose claim to emancipation

was affected by it, had been removed to Virginia about nine years before the decision was made. In that case, the following emphatic language was used: "The construction given to the law of Maryland by the decision of the court of that State puts the Maryland deed of emancipation out of the case." Chief Justice Marshall, in the case of Elmendorf v. Taylor, 10 Wheaton, said: "This court has uniformly professed its disposition, in cases depending on the laws of a particular State, to adopt the construction which the courts of the State have given to those laws. This course is founded on the principle, supposed to be universally recognized, that the judicial departments of every government, where such department exists, is the appropriate organ for construing the legislative acts of that government. Thus, no court in the universe, which professed to be governed by principle, would, we presume, undertake to say that the courts of Great Britain, or of France, or of any other nation, had misunderstood their own statutes; and therefore erect itself into a tribunal, which should correct such misunderstanding." In this last case, decisions of the Kentucky court of appeals, made long after the rights of the respective parties had attached, control the judgment of the supreme court of the United States. In Shelby v. Guy, 11 Wheaton, 367, it is remarked, that a fixed and received construction of the statutes of the several States, in their respective courts, makes in fact *a part of the statute law of the country.* There are many other decisions to the same effect, some of which we cite without comment.—Johnston v. S. W. R. R. Bank, 3 Strob. Eq. 263–300; McRae v. Mattoon, 13 Pick. 53; Sidney v. White, 12 Ala. 728; Raynham v. Canton, 3 Pick. 293; Mutual Ass. Co. v. Watts, 1 Wheat. 279–290; Polk v. Wendell, 4 Cranch, 87–98; McKeen v. DeLaney, 5 *ib.* 22; Gardner v. Collins, 2 Peters, 85; United States v. Morrison, 4 Peters, 124; Cathcart v. Robinson, 5 Peters, 264; Green v. Neal, 6 Peters, 291; Walker v. Forbes, at the last term; Davidson v. Sharp, 6 Iredell, 14; Inge v. Murphy, 10 Ala. 885; Peake v. Yeldell, 17 Ala. 136; Hanrick v. Andrews, 9 Porter, 9; American P. W. v. Lawrence, 3 Zabriskie, 590.

An examination of the facts in the cases above cited will show, that the courts have not denied the authority of decisions construing statutes, either because the decisions were made after the transactions which were passed upon occurred, or after the persons affected had emigrated to another State. The principle is, that by the *comitas gentium* the courts of the several States must be permitted to construe their own statutes; and it is founded in justice and reason. The courts of each State must be presumed best to understand all the circumstances which influence the judicial construction of its statutes.

The Maryland decision does not place an absurd or unreasonable construction upon the statute. The statute is "darkly and clumsily penned."—Thrift v. Hannah, *supra.* Its meaning is doubtful. It is one of those laws, which different minds might differently understand. This case, therefore, does not present an example of an unreasonable and absurd construction placed by the court of a State upon its statute; and we are not called upon to decide, and therefore do not decide, what weight should be allowed to such a decision.

From the decision which we have made upon the main question in this case it follows, that the petitioners are not free persons, unless the defendant is estopped by the judgment of the Kentucky court, in favor of the freedom of their maternal ancestor. Let it be conceded, as the evidence conduces to show, that the defendant here holds under Molly Townsend, who was the defendant in the Kentucky suit; and that the title was derived from her after the judgment in that suit; and the question, thus presented in the most favorable aspect for the petitioners, we are constrained to decide against them. If Molly Townsend herself were the defendant to this suit, she would not be estopped by the judgment. Estoppels must operate reciprocally. Molly Townsend would not be estopped, as to the question of the freedom of the child, by a judgment in favor of the mother, unless the child would have been estopped, if the judgment had been the other way. A judgment against a vendor or assignor, after the title has passed to the vendee or assignee, does

not operate as an estoppel against the latter.   A foreclosure of a mortgage, in a suit against the mortgagor, does not operate against an assignee of the mortgagor by a previous assignment.—Crutchfield v. Hudson, 23 Ala. 303; Thomason v. Odum, at the last term; Cooper v. Martin, 1 Dana, 23; Starkie on Ev. 2 Part, 194; Adams v. Barnes, 17 Mass. 365; 3 Bacon's Abr. 549, *Evidence*, F. The same principle is applicable here.   Grasey, who is the mother of the other petitioners, had derived freedom or slavery by birth from her mother, Matilda, before the proceedings were instituted in the Kentucky court; and her right to freedom could not be affected by a judgment against her mother in that case.   As Grasey would not have been estopped by the judgment in that case, if adverse to her mother, so she cannot avail herself of the contrary judgment as an estoppel in her favor.

We are aware that the decision in the case of Shelton v. Barber, 2 Wash. 82, is susceptible of a construction which would place it in opposition to the conclusion above expressed; but we think we are sustained by principle, and we regard the decisions in Davis v. Wood, 1 Wheaton, 1; Davis v. Wood, 7 Cranch, 271; and Alexander v. Stakely, 7 S. & R. 299, as inconsistent with Shelton v. Barber, *supra*, and supporting the proposition we have laid down.

It results from what we have said, that, upon the facts before us, the petitioners are slaves.   It is therefore unnecessary for us to consider the other questions argued.

The judgment of the court below is reversed, and the cause remanded.