[Wilson's Adm'r v. Holt.]

# Wilson's Adm'r *v.* Holt.

*Bill in Equity by Heir at law of Deceased Husband, to establish Trust in Wife's Lands under Marriage Contract; also, for Partition, and Account of Rents.*

1. *Presumption of settlement and discharge of trust from lapse of time; computation of time.*—Where the husband entered into possession of the wife's lands, jointly with her, on their marriage in 1861, and they continued in the joint possession, until his death in 1865, after which the wife administered on his estate until January, 1866, when she resigned, and then destroyed an unrecorded marriage contract executed in anticipation of their marriage, by which she declared an express trust in his favor in one-half of her lands, contingent on an event which had happened during the coverture; *held,* on bill filed by the heir at law of the husband, to enforce the trust against the heirs or devisees of the wife, and against purchasers at a sale made by her administrator, that the prescriptive period of twenty years, relied on as raising a presumption of settlement and discharge of the trust, did not begin to run until the repudiation of the trust by her.

2. *Heirs or devisees, as holders of legal title; when necessary parties to bill.*—The heirs or devisees of the deceased wife are necessary parties to a bill filed by the heir at law of the deceased husband, seeking to establish his equitable interest under a marriage contract in lands which had belonged to the wife, and which had been sold by her administrator under a probate decree, when it appears that the order of sale was void for want of jurisdiction, whereby the legal title was left in them; and this, though the purchaser has acquired a perfect equitable title as against them by payment of the purchase-money in full, and their receipt of it.

3. *Amendment to bill, bringing in new parties; takes effect when.*—When new parties to a bill, holders of the legal title to land in which the complainant seeks to establish a trust, are brought in by amendment, the amendment does not relate back to the filing of the original bill, but takes effect only from its date; and they may plead the statute of limitations, or take advantage of the staleness of the demand.

4. *Estoppel against heirs by receipt of purchase-money for land sold by administrator; who may claim benefit of.*—If lands are sold by an administrator under a probate decree which is void for want of jurisdiction, the purchase-money paid in full, and distributed among the heirs, they are estopped from asserting their legal title against the purchaser ; but this estoppel does not enure to the benefit of a third person, who seeks to enforce a trust in the land under contract with the decedent, and fails to bring in the heirs as parties until his claim is barred as against them.

APPEAL from the Chancery Court of Montgomery.

Heard before the Hon. JOHN A. FOSTER.

The original bill in this case was filed on the 29th January, 1883, by Waldo P. Wilson, only surviving child and heir at law of Dr. Robert S. Wilson, deceased, against James S. Holt

and others; and sought, principally, to establish and enforce the complainant's right and title to an undivided half interest in a large tract of land near the city of Montgomery, which he claimed under the provisions of an alleged ante-nuptial contract between his father and Mrs. Emmeline S. Chambliss, then the widow of David Chambliss, deceased; also, for a partition of the land, or a sale for partition, and an account of rents against the defendants, who were in possession of different portions of the land, claiming under purchases from the administrator with the will annexed of said Emmeline S.

Dr. Wilson and Mrs. Chambliss were married in November, 1861, and lived together on the land, cultivating it with the slaves, until the close of the war; and they continued to live on it until his death in November, 1865. Letters of administration on his estate were granted to the widow, and she continued to act until January 20, 1866, when she resigned. The marriage contract had never been recorded, and the bill alleged that it was destroyed by the widow while acting as administratrix. Mrs. Wilson, afterwards Campbell, died in May, 1873, and she made disposition of the land by her will, directing it to be sold, and the proceeds distributed among certain persons named, who, with one exception, were her next of kin. Her will was duly admitted to probate in Montgomery county, and letters of administration with the will annexed were granted to B. F. Noble, who, in November, 1876, obtained an order of sale from the Probate Court, on the ground that the lands could not be equitably divided without a sale; and the lands were sold under this order, part on the 8th January, 1877, and part on the 3d March, 1879.

The devisees under the will were made parties to the original bill, but were struck out on demurrer; and on the second appeal in the case (83 Ala. 528), it having been decided by this court that the order of sale was void, leaving the legal title still in them, they were again introduced as parties by amendment, against their objection.—85 Ala. 95. The purchasers and sub-purchasers, who were defendants to the bill, pleaded the statute of limitations, and claimed protection as *bona fide* purchasers without notice, having paid the purchase-money; but this court ruled against these defenses, as shown by the report on the second appeal.—83 Ala. 528. W. P. Wilson, the complainant, died in August, 1888, and letters of administration on his estate were granted to H. C. Tompkins, in whose favor the suit was revived on the 11th March, 1889. On the 11th April, 1889, the administrator filed an amended bill, in which he alleged that the sales by the administrator were by him reported to the court, and by it confirmed; that the pur-

[Wilson's Adm'r v. Holt.]

chase-money was paid in full, was accounted for by the administrator on settlement, and was distributed among the devisees under the decree of the Probate Court; and he insisted "that said heirs and devisees now have in equity no interest or title in or to any of said lands, but the entire equitable interest and title therein, so far as they had any, is now vested in said several purchasers, subject only to the equity of said Waldo P. Wilson."

The heirs and devisees filed an answer to the bill as amended, in which they set up the defense, both by demurrer and plea, that the complainant's demand was stale, and was barred by the lapse of time; and the chancellor sustained this defense, sustaining their demurrer to the bill, and overruling a demurrer to their plea. The chancellor's decree is now assigned as error.

WATTS & SON, and with them TOMPKINS & TROY, for appellant.—The complainant's equitable rights in and to the lands involved in this suit, as against the purchasers at the administrator's sale, were conclusively settled by this court on the former appeal; and it was also decided that his claim was not barred as against them, the real defendants, either by *laches*, prescription, or the statute of limitations. When the court held, on the second appeal, that the sale by the administrator was void, leaving the legal title in the devisees, it appeared that they were necessary parties to the bill, on the facts then shown by the record; and they were again made defendants, though their names had been struck out, on demurrer, as defendants to the original bill. But the admitted facts now show that these devisees had no interest whatever in the land —that they had only the mere shell of a legal title, with no kernel of equity in it; that the purchasers had acquired a perfect equitable title as against them, against which they could not set up their naked legal title. Having no beneficial interest in the subject-matter of the suit, they were merely nominal parties, and their intervention can not disturb the equitable rights of the real parties in interest.—*McIntosh v. Reid*, 45 Ala. 456; *Abraham v. Hall*, 59 Ala. 386; *McKay v. Broad*, 70 Ala. 377; *Wilkinson v. May*, 69 Ala. 33; *Craft v. Russell*, 67 Ala. 9; *Shakespeare v. Alba*, 76 Ala. 351. Admitting that it was necessary to bring them in, as holders of the naked legal title; yet, as the amendment bringing them in introduced no new interest, no new cause of action, it must be held to relate back to the filing of the original bill.—*Johnson v. Martin*, 54 Ala. 271; *Stringer v. Waters*, 63 Ala. 361; *Lemle v. Mohr*, 69 Ala. 180; *Tel. Co. v. May*, 83 Ala. 542; *Railroad Co. v. Chapman*, 83 Ala. 453. The purchasers at

[Wilson's Adm'r v. Holt.]

the administrator's sale have an equitable title, against which the legal title of the heirs and devisees can not be asserted; and the complainant has established his equitable title against the purchasers, in spite of their defense of staleness and the statute of limitations. The equitable estoppel of the purchasers, as against the devisees, must enure to the benefit of the complainant; else the anomaly is presented of an equitable title to land, conclusively established against the only holder of an adverse beneficial interest, nevertheless defeated by a naked legal title, against which the adverse holder has a complete equitable title. Equity looks to the substance, not to the form of things.

W. A. GUNTER, *contra.*—The right asserted by complainant ante-dates the rights of all the defendants, who claim under Mrs. Chambliss (Wilson), some of them as devisees under her will, and the others as purchasers at a sale made by her administrator. If his right is sustained and established, it must be against the holders of the legal title, since the equitable rights of all the defendants are subordinate to his superior equity. But the heirs and devisees, the holders of the legal title, were not brought in as parties until after the lapse of twenty years, which barred all relief as against them; and they set up this defense, both by demurrer and by plea. That this defense was open to them, see Wood on Limitations, 14, n. 4; *Miller v. McIntyre*, 6 Peters, 64; *French v. Hay*, 22 Wall. 246; *Walsh v. Smyth*, 3 Bland, 20. The complainant does not claim under the heirs and devisees, nor under the purchasers; and he can not claim the benefit of an equitable estoppel as between them, since he is not bound by it.—Big. Estoppel, 5th Ed., 334, 347-8; *Gwynn v. Hamilton*, 29 Ala. 236; *Edmondson v. Montague*, 14 Ala. 370; *Bentley v. Cleveland*, 22 Ala. 814; *Bloodgood v. Grasey*, 31 Ala. 575; *Waters' Appeal*, 35 Penn. St. 623; *Campbell v. Hall*, 16 N. Y. 575; *Shay v. McNamara*, 54 Cal. 159; *Doe v. Derby*, 1 Ad. & El. 783.

McCLELLAN, J.—Reference is had to the reports of this case as heretofore presented and decided in this court, for a fuller understanding of the matters involved in the present appeal.—*Holt v. Wilson*, 75 Ala. 58; *Wilson v. Holt*, 83 Ala. 528; *Wilson v. Holt*, 85 Ala. 595.

When the case was first here, it was ruled, (1) that by the ante-nuptial contract between Wilson and Mrs. Chambliss, an express trust was, in effect, declared on the part of the latter, to stand seized of the legal title to the use of her intended

[Wilson's Adm'r v. Holt.]

husband, which trust was to become operative on the death of her daughter, Sallie D. Chambliss, and (2) that the trust did become operative on the death of Sallie in May, 1862; and Mrs. Chambliss and Wilson having held and occupied the lands as equal tenants in common from the time of their marriage in 1861, to the death of the husband in 1865, that the husband's possession must be referred to the marriage contract under which he entered, and the continuance of such possession was evidence of a recognition of the trust as existing, continuing and undischarged up to the time of his death, and subsequently to January 20, 1866, when Mrs. Wilson resigned the administration of his estate, and repudiated the trust by the destruction of the ante-nuptial contract; and that on this bill, filed by the heir of the husband in January, 1883, against parties claiming adversely to him through the widow, for an enforcement of the trust, no presumption of settlement or discharge of the trust from the lapse of time could arise, although the trust may have been repudiated immediately after the death of complainant's ancestor.—75 Ala. 58.

The decision of these points was not departed from on either of the subsequent adjudications of this court in the premises; the averments of the bill in respect to them remain the same as when the cause was first appealed; the evidence subsequently taken supports these allegations, and we now re-affirm the conclusion then reached, as to the date at which the period of twenty years, relied on to raise up a presumption of settlement of the trust, began to run. This date was, as we have seen, January 20, 1866.

The land was sold in 1877, and 1879, by the administrator of Mrs. Campbell, formerly Mrs. Wilson; and Holt and others became the purchasers, went into possession, and afterwards and prior to the filing of this bill paid the purchase-money in full, and the same was duly distributed to, and received by those entitled to it under the testatrix's will. The bill was originally filed against the purchasers at these sales, and certain vendees to whom parts of the land had been sold by them, and also against the devisees of Mrs. Wilson. Upon their demurrer, these latter were stricken out, and the cause proceeded against said purchasers and their said vendees, until it was developed that the sale by the administrator *cum annexo testamento* was void for the want of jurisdictional allegations in the petition for the order of sale, and so adjudged by this court on the second appeal.—83 Ala. 528.

When the cause was last here, it was held that, the administrator's sale being inoperative to divest the legal title to the land out of the devisees of Mrs. Wilson, it was still in them;

that the relief prayed by the bill could not be granted without having that title before the court, and, hence, that the devisees aforesaid were indispensable parties defendant to the bill. 85 Ala. 95. Accordingly, on April 11, 1889, the bill was amended so as to make said devisees parties defendant; and they were regularly served and brought before the court. Upon coming in, they by demurrer and pleas raised the point, among others, that the relief prayed against them was a stale demand, more than twenty years having elapsed from the last recognition of the alleged trust. The chancellor, holding this defense well taken, sustained the demurrer to the bill, and overruled complainant's demurrers to the pleas. This appeal brings under review his action in that regard.

The trust having been repudiated on January 20, 1866, it is manifest, of course, that the twenty years necessary to raise up a presumption of its settlement and discharge had more than elapsed on April 11, 1889, when the amendment bringing in the holders of the legal title was made; and it is not pretended that there had been any recognition of the trust in the meantime. There can be no sort of doubt, we apprehend, that the amendment by which these parties were brought in, must stand upon the same footing, so far as their defense of staleness of demand is concerned, as if it were an original action; and, hence, any relief sought against them must be considered, in respect of the diligence with which they have been impleaded, from the standpoint of the amendment, and without reference to the filing of the original bill.—*Lawrence v. Bollan*, 50 Cal. 528; *Miller v. McIntyre*, 6 Pet. 64; *King v. Avery*, 37 Ala. 169; *Seibs v. Englehardt*, 78 Ala. 508, and citations.

This general proposition is not controverted here, but it is insisted for appellant that, under the peculiar facts of this case, it can have no application. The considerations relied on to this end are, that Holt and others, claiming under the void administrator's sale, had a perfect equitable title to the land, resulting from the payment by them to the administrator of the entire purchase-money, and its payment by the administrator to these devisees, who alone had any interest in the land, or the proceeds of its sale, and that the devisees now have, or had at the time they were made parties, no beneficial interest whatever in the subject-matter of the suit, but "only the mere shell of a legal title, with no kernel of equity or beneficial interest in it." These facts may be, indeed they are, admitted. Not only so, but they were in the case as heretofore presented in this court; and the rulings then made, declaring these devisees to be necessary parties, must have proceeded in

the recognition of the want of beneficial interest or estate in them, and upon the theory that, inasmuch as the relief prayed —the only relief appropriate to the rights of complainant in the premises—involved the divestiture of the legal title, however naked and dissociated with real interest it might be, out of these devisees, and a vesting of it in the complainant, it could not be granted without having the thing upon which the decree was to have such important and vital operation before, and subject to the jurisdiction of. the court. So that the question may be said to be, in a sense, *res adjudicata* in the case. We can not conceive the relief sought to be possible, on the facts now in the bill, except through a decree operating directly upon the legal title. The bill seeks the specific performance of what is, in legal effect, a contract to convey title to the land into complainant. It demands that certain land be conveyed to him in fee absolute, and involves every possible interest and estate, legal or equitable, in it. Manifestly, the right it presents could not be effectuated by a decree vesting some equitable interest in the complainant. The whole theory of the bill is, that he is already, by virtue of the antenuptial contract, and without the aid of any court, the holder of an equity which is paramount, not only to the legal title, but also to all supervening equities in third parties; and a decree which would stop with vesting such equities in him, if such a decree could be rendered, would leave him, with respect to the relief he prays, precisely where he is now—the holder of equities upon which he could call for the legal title within certain limitations as to time.

But, if the subrogation of the complainant to the equity of Holt and others would effectuate the relief he prays, we are unable to see how the subrogation itself is to be effected. That equity arose upon certain facts with which the complainant had nothing to do. It exists by reason of an estoppel to which he is an utter stranger. All that occurred in that connection was *res inter alios acta* with respect to the complainant. Holt and his co-defendants, who claim under the administrator's sale, have a perfect equitable title, by reason of matters transpiring between them and the holders of the legal title, which operate to estop the latter from disputing their right to the land. Though the sale was void, they paid the purchase-money in full, and it went into the hands of the devisees, who now, having this money, can not be heard to say that the transaction out of which it issued to them was void, and that, notwithstanding they have been as fully benefited thereby as if it had been in all respects valid, and retain the benefits thus accruing to them, the land still belongs to them.

[Wilson's Adm'r v. Holt.]

It requires no argument to demonstrate that the complainant bears no relation to these transactions. He has paid nothing, parted with nothing, done nothing, nor refrained from action in such sort as would make it inequitable for the devisees, as against him, to insist that the administrator's sale was void; and there is no predicate for any equitable estoppel operating upon them with respect to him. On the contrary, his position is, that his right was paramount to the rights of all the parties to these transactions, and so far from relying on the rights acquired by the purchasers against the devisees, he insists, and presents facts which support his insistance, had they been seasonably brought forward, that the devisees could not sell, and Holt and others could not purchase, his interest in the property, and that whatever the *status* of the matter between them may be, he is entitled to the relief he prays against all of them, on a title which antedated all these transactions, and was in no wise affected by them. He is not estopped to assert his rights against the purchasers by the payment of the purchase-money by them to the devisees; and no more can that fact be relied on to estop the devisees to question the right he now asserts against them. There is no mutuality between them and him. He is a stranger to the estoppel, and can neither be helped or hindered by it.—Bigelow on Estoppel, pp. 98, 324, 454, 455; *Edmondson v. Montague*, 14 Ala. 370; *Bentley v. Cleveland*, 22 Ala. 814; *Gwynn v. Hamilton*, 29 Ala. 236; *Bloodgood v. Grasey*, 31 Ala. 575; *M. & C. R. Co. v. Grayson*, 88 Ala. 572.

The devisees are not only necessary parties to this bill, they are the *only* necessary parties. The complainant seeks that which they alone have, he prays relief which they alone can give. He asserts that they have a title, the legal title, which in equity belongs to him, and which chancery should vest in him. This title is not his through them, but over them, and came to them charged with the trust which he now asks to have executed. His equity is not subsequent, but anterior and paramount to their title. He claims, therefore, not in privity with them, not under them, but by a covenant antedating their succession to the legal title, and running with the land. No privity can be predicated of these facts, showing as they do a *prior* paramount right in the complainant on the one hand, and a *subsequent* succession by the devisees on the other; and hence no estoppel of the complainant, on the idea of a succession by him to the title of the devisees, can arise in favor of the purchasers, and no estoppel which the latter have against the devisees can enure to the complainant.—Bigelow on Estoppel, (5th Ed.) 347–8; *Waters' Appeal*, 35 Pa. St. 523; *Campbell v. Hall*, 16 N. Y. 575; *Doe v. Derby*, 1 Ad. & El. 783.

[Wilson's Adm'r v. Holt.]

Nothing, therefore, which transpired between the purchasers and devisees could at all affect complainant's rights. The purchasers have acquired nothing which he can demand of them, and nothing which would stand in the way of the relief he seeks against the devisees. If his prayer is granted, and he is invested with the legal title to a half undivided interest in the lands, he would at once become a tenant in common with Holt and others, they holding by equitable estoppel against the devisees the beneficial title to the other undivided half. His remedy in that event would be an action at law against the purchasers, to be let into possession as a tenant in common with them. So that it is manifest that the purchasers were not essential parties to this bill, and that the devisees alone were and are parties defendant without whom the case could not proceed. We neither know nor can we conceive of any case, or any state of facts, upon which any relief could be granted in the absence of the only necessary parties, or where, the only necessary parties being in court, the relief sought is as to them a stale demand, or barred by the statute of limitations. The purchasers were, perhaps, proper parties for the purposes of adjudging and settling the complainant's alleged right against them, after his primary equitable right against the devisees had been effectuated, on the principle that the court, having assumed jurisdiction for the adjudication of the equity involved in the subject-matter, will proceed with and fully settle the whole controversy, though, as to some matters involved, the rights of the parties are purely legal, and will not turn the parties around to an action at law. But, before the court can proceed to adjudge these consequential legal rights arising between the complainant and the purchasers, the *primary* equity, upon which alone is based the court's jurisdiction to hear the controversy at all, must be established against the devisees.—*Pond v. Lockwood*, 8 Ala. 669; *Frieder v. Leinkauff*, at present term.

Then, too, the propriety of bringing in the purchasers may, perhaps, be rested on the consideration, that their possession was adverse to the complainant, and if they were not made parties within ten years from the time it took on that character, might ripen into title against him. But this clearly did not involve a necessity to make them parties, even conceding the continuance of their possession for the requisite period, whilst this bill was pending against the devisees, would have that effect; for *non constat*, but that a decree would pass vesting the legal title in complainant, and enabling him to bring ejectment before the lapse of ten years of such adverse possession.

[Mobile Street Railway Co. v. Turner.]

But whether they were proper parties or not, is wholly immaterial. They were not necessary parties. The right of the complainant to have the contract to convey the legal title to him enforced—to have the trust executed—and which is the only equitable right in the case, could have been fully effectuated by proceeding solely against the holders of that title. And we can not subscribe to the anomaly involved in holding that that right could be effectuated against any other parties than such holders, or that it could be effectuated at all, after the efflux of time had raised up a presumption of the settlement of the trust, in favor of those upon whom alone the complainant could call for its execution.

The decree of the chancellor sustaining the defense of the staleness of the demand interposed by the holders of the legal title in their demurrer to the bill, and in certain of the pleas filed, is in consonance with the views we have expressed; and it is affirmed.

CLOPTON, J. not sitting.